THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* MICHAEL DASENBROCK *et al.*, Defendants-Appellees.

Fifth District    No. 80-223

Opinion filed May 19, 1981.

Lawrence Eaton, State's Attorney, of Newton (Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Barry S. Frazin, of Chicago, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Pursuant to Supreme Court Rule 604(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)), the State appeals from an order of the trial court granting the motion of the defendants, Michael and Catherine Dasenbrock, to quash a search warrant and to suppress evidence seized in consequence of it.

Defendants were charged with the unlawful possession and production of cannabis. On appeal two principal issues must be resolved: (1) whether a search warrant was necessary for that part of the search in which evidence was observed growing out-of-doors upon defendants'

property, and (2) whether the complaint for search warrant established probable cause for issuance of the warrant, which led to a search of the inside of defendants' residence and resulted in seizure of all the evidence taken in the case from both inside and outside the residence.

At the hearing on defendants' motion to quash and to suppress, the parties stipulated as to certain facts as follows:

"STATES ATTORNEY: After a conference between the attorney for Mr. and Mrs. Dasenbrock and myself we have agreed that if evidence were presented in support of this search warrant it would show the following facts: (1) On September 25, 1979, the Sheriff of Jasper County, after receiving an anonymous citizen's complaint as stated in the complaint the Sheriff went to the premises, walked from a bean field owned by Mr. Oscar Strutner and when the Sheriff was 5 to 10 feet on the Dasenbrock property he saw what he stated to be marijuana in the complaint for search warrant. The entry on the Dasenbrock property was without consent; (2) No chemical test of the marijuana was made before the search warrant issued and the only means of identifying the marijuana was by observation.

MR. FRAZIN [attorney for defendants]: Prior to the securing of the search warrant.

STATES ATTORNEY: That's all right. (3) The Dasenbrock property is not enclosed by any fence and was surrounded by soybean fields owned by Mr. Oscar Strutner as tenant on three sides and fronts on a public road. The Dasenbrock property consists of about ¾ acre approximately in a square; (4) During execution of the search warrant in excess of 500 grams of marijuana plants were found growing in the rear of the house behind the house where the plants could not be viewed from the public road but could be seen from the bean field. There was about 280 grams of marijuana found in the Dasenbrock house searched pursuant to the warrant.

MR. FRAZIN: I will stipulate to that set of facts assuming that the chemical analysis does coorborate [sic] it was, in fact, marijuana."

The complaint by Sheriff Finn, which was signed and sworn to before Judge Arthur G. Henken, describes the property to be searched:

"The house, barn and shed located on [legal description] Jasper County, Illinois, said buildings being located approximately one-fourth mile South of the public road running on the North side of said Section 36 and approximately one-fourth mile West of the East line of said Section 36."

Thereafter complainant stated,

"On the 25th day of September, 1979, Complainant personally observed Cannabis growing near the buildings located in the above property and saw Cannabis growing, being six Feet or more in heighth [*sic*], went to where the Marijuana was growing, and personally verified existence of the Marijuana.

Complainant further says that a citizen informed him that Marijuana was being harvested and dried in the buildings located in the above described property. Said citizen's complaint was received on September 25, 1979."

With reference to the initial search of defendants' property outside the residence, the State maintains that, even if the warrant later obtained was in fact defective, no warrant was necessary to search for or to seize the material located there by virtue of the "open fields" doctrine. That doctrine was announced in *Hester v. United States* (1924), 265 U.S. 57, 59, 68 L. Ed. 898, 900, 44 S. Ct. 445, 446, where the court held that "the special protection accorded by the 4th Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." Later, in *Katz v. United States* (1967), 389 U.S. 347, 351-52, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511, relied upon by defendants, the court stated,

"[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

The court held that the government's activities while the defendant used a telephone booth "violated the privacy upon which he justifiably relied." (389 U.S. 347, 353, 19 L. Ed. 2d 576, 583, 88 S. Ct. 507, 512.) Commenting upon the significance of *Katz*, Professor LaFave in 1 Search and Seizure §2.4, at 336 (1978), stresses the need for exercising a value judgment in any application of the "open fields" doctrine in order to avoid a result consistent with *Hester* but offensive to the rationale of *Katz*. LaFave states:

"Nonetheless, it is to be hoped that courts will come to accept the fact 'that *Hester* no longer has any independent meaning but merely indicates that open fields are not areas in which one traditionally might reasonably expect privacy.' This is because a direct and unthinking application of the *Hester* 'open fields' doctrine will on occasion produce a result which is offensive to the theory underlying *Katz*. *Katz*, in the last analysis, calls for the making of an important value judgment: 'whether, if the particular form of surveillance practiced by the police is permitted to go unregulated

by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society."

The Supreme Court of Illinois recognized the "open fields" doctrine in *City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 253 N.E.2d 425. Recently, in *People v. Lashmett* (1979), 71 Ill. App. 3d 429, 389 N.E.2d 888, *cert. denied* (1980), 444 U.S. 1081, 62 L. Ed. 2d 765, 100 S. Ct. 1034, the court applied the doctrine to a search related to missing farm equipment conducted in a fenced-in area on a farm. The sheriff had personally gone onto the defendant's property to observe the identification plate on a tractor and had found that it bore the same identification number that was on an identification plate earlier declared missing, together with parts from a tractor, from another county. This information was used to obtain a warrant to search the property. The sheriff's search of the tractor, which was near a hog shed, had taken place about 100 to 125 yards from the defendant's dwelling. The area of this search could not be seen plainly from adjacent public ways and was "enclosed by an outer fence and an inner fence both of which the sheriff had crossed to get to the tractor." (71 Ill. App. 3d 429, 436, 389 N.E.2d 888, 893.) Among the cases discussed and quoted by the court in *Lashmett* in coming to its decision was *United States v. Fluker* (9th Cir. 1976), 543 F.2d 709, 716, in which that court quoted its own earlier language, interpreting *Katz*:

" '[I]t seems to us a more appropriate test in determining if a search and seizure adjacent to a house is constitutionally forbidden is whether it constitutes an intrusion upon what the resident seeks to preserve as private even in an area which, although adjacent to his home, is accessible to the public. * * *' "

Using this rationale, the *Lashmett* court concluded that "[t]he distance between the shed and the house and the open nature of the land between also negates an expectation of privacy by defendant in the area of the tractor" (71 Ill. App. 3d 429, 437, 389 N.E.2d 888, 893) and held the search not in violation of the defendant's rights under the fourth amendment.

■■ In the instant case defendants contend that theirs was a reasonable expectation of privacy. With that contention we must disagree. Although defendants apparently had planted their crop or crops at a location behind their house not visible from the public road that passed in front of it, the area they selected was not only unenclosed in any way, but also visible from three of the four sides of their property. Defendants could not reasonably have expected that no member of the general public would come upon their property, or that of their neighbor's around them, for an innocent reason and notice whatever was growing there. There is no indication that the apparently rural property was even marked against trespassing. The sheriff had advanced only 5 to 10 feet upon defendants'

property from an adjacent bean field when he observed what he believed to be six-foot cannabis plants growing there. According to the stipulated facts, the plants in question were actually visible from the neighboring bean field. Although defendants located the crop in an area where the likelihood of its being seen by others was diminished, they can hardly be said by so doing to have exhibited as to this area a reasonable expectation of privacy upon which they justifiably relied. We doubt that anyone would maintain in all candor or seriousness that if the form of surveillance practiced by Sheriff Finn is permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens will be diminished to a compass inconsistent with the aims of a free and open society. Therefore we hold that the sheriff's initial out-of-doors search of defendants' property did not violate their rights under the fourth amendment. In view of the applicability of the "open fields" doctrine to this case, we need not consider whether the tip by an unnamed citizen provided probable cause for this initial out-of-doors observation.

We turn now to the question of the sufficiency of the complaint for search warrant. Section 108—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1979, ch. 38, par. 108—3) provides in pertinent part:

"(a) Except as provided in subsection (b), upon the written complaint of any person under oath or affirmation which states facts sufficient to show probable cause and which particularly describes the place or person, or both, to be searched and the things to be seized, any judge may issue a search warrant * * *."

As was stated in *People v. Jefferson* (1974), 25 Ill. App. 3d 445, 448, 323 N.E.2d 495, 497, "Probable cause exists where facts and circumstances within the knowledge of affiant are sufficient in themselves to warrant a person of reasonable caution to believe that the law is being violated and that evidence is on the premises to be searched." In their brief defendants explain the basis of their objection to the search warrant:

"Nowhere in the sworn Affidavit is there any facts [*sic*] which upon which [*sic*] the issuing judge could conclude that Sheriff Finn was capable of identifying cannabis. The assertion of a mere conclusion is not sufficient. *People v. George* 49 Ill. 2d 372 (1971). The Affidavit must state facts from which it can be concluded that a crime had been committed. *Nowhere* in the sworn Affidavit of Sheriff Finn does it state his prior experience in identifying cannabis and *nowhere* does it state what specific training he may have had in the field of detection of cannabis in either the growing state or post-growing state. His conclusion based upon sight alone without any allegations in the Complaint of past experience and training concerning any expertise in identification of the substance is *only* a conclusion."

In reply the State argues,

> "It is virtually inconceivable that a law enforcement officer could not identify the [cannabis] plant by sight. If, as is so often stated, common sense and reasonableness truly are the touchstones in interpreting affidavits for warrants, *United States v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 746, 21 L. Ed. 2d 637 (1964), and in evaluation of Fourth Amendment claims generally, *In re Boykin*, 39 Ill. 2d 617, 237 N.E.2d 460, 462 (1968), then the sworn statement of a police officer that he himself has personally seen a six-foot cannabis plant on a given occasion goes well beyond the level of 'probable cause,' and very nearly excludes reasonable doubt."

In view of the facts presented in this case, however, we need not decide whether the sheriff's omission of an averment of his prior experience in identifying cannabis is a fatal defect in this complaint for search warrant. As the State urges, "[T]he sheriff's personal observation was in fact corroborated. * * * Assuming, *arguendo*, that the anonymous 'tip' was by itself insufficiently reliable to afford probable cause, it nevertheless provided a measure of corroboration as to the accuracy of the sheriff's observations." Much in the same vein, Professor LaFave suggests that an inadequate tip by an anonymous informant when joined with the observations of an affiant, may serve to bridge a gap in the showing of probable cause:

> "Sometimes the direct observations [of the affiant] or other facts not supplied by the informant themselves establish probable cause, thus making the informant's story superfluous. Sometimes those observations [of the affiant] and other facts are highly suspicious and come very close to establishing probable cause, thus justifying use of an inadequate informant's tip to bridge the gap." 1 Search and Seizure §3.3, at 569 (1978).

■■■ While we do not determine the sufficiency of the unnamed citizen's tip itself for purposes of establishing probable cause for issuance of this search warrant, we find that the tip bridged any gap, if any gap there was, in the sufficiency of the observations of the affiant, Sheriff Finn, insofar as those observations are expressed on the face of the complaint. The affiant here relied not solely or even principally upon the tip of this unnamed person but, instead, upon his own observations, which were made as he attempted to verify the tip. In the independent judgment of not one but two persons—one of whom was a sheriff—a plant as visually distinctive as cannabis was being cultivated on defendants' property. The sheriff and the unnamed person, whatever the source of his or her information, were necessarily speaking not of a "white powder"—which may readily be confused with or contain innocuous substances as well as controlled ones—but of plants rooted in the soil that were, by the sheriff's description, "six Feet or more" in height and said by him, as well as the person

who provided the tip, to be cannabis. It is well established that common sense is the test of the affidavit for search warrant, which must show not guilt beyond a reasonable doubt, but merely probable cause to believe that the law is being violated and that there is evidence to that effect on the premises specified for search. (*People v. Jefferson.*) Abiding by these principles, we conclude that these facts were sufficient to warrant someone of reasonable caution to find that the law was indeed being violated and that evidence was on the premises designated for search. We hold that the complaint herein sufficiently showed probable cause for issuance of the warrant to search the described property, and we therefore reverse the judgment of the circuit court and remand the cause for further proceedings.

Reversed and remanded.

HARRISON and WELCH, JJ., concur.