THE STATE OF WASHINGTON, *Respondent,* v. WALTER
F. JACKSON, ET AL, *Petitioners.*

*Timothy K. Ford,* for petitioners.

*C. Danny Clem, Prosecuting Attorney,* and *Kenneth G. Bell, Deputy,* for respondent.

ROSELLINI, J.—Petitioners Walter and Linda Jackson appeal a Court of Appeals decision affirming convictions for possession of marijuana. The primary issue is whether a search warrant was valid under Const. art. 1, § 7.

We hold that Const. art. 1, § 7 requires that, in evaluating the existence of probable cause in relation to informants' tips, the affidavit in support of the warrant must establish the basis of information and credibility of the informant. *See Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). We find that the affidavits and independent investigatory corroboration satisfy these requirements and the warrant was thus valid. The convictions are affirmed.

The challenged Jackson residence search warrant stemmed from federal surveillance of Judith Stern, who, like the Jacksons, lived on Bainbridge Island. The affidavit supporting the search warrant for the Jacksons' home incorporated by reference several affidavits and other documents which had been filed in conjunction with the investigation of Stern. None of these documents mentioned the Jacksons, but they did describe Stern's activities in some detail. According to informant James Howell, Stern represented herself to be the largest marijuana dealer in this part of the country. Howell stated that he had, at Stern's

direction, purchased two mini motor homes and modified them so they could be used for smuggling marijuana from Florida to Washington.

The affidavit in support of the warrant to search the Jackson residence recited that on March 9, 1981, pursuant to a federal warrant, federal agents searched Stern's residence on Bainbridge Island and seized about 5,000 pounds of marijuana, $140,000 in cash, and two handguns.

The Jackson affidavit next stated that on the same day Stern's residence was searched, federal agents saw a BMW arrive at the Stern residence. The BMW was registered to Larry Corby. According to the affiant, "the reliable informant" had previously identified a "Larry" as one of Stern's principal distributors. On the afternoon of March 9, the agents saw Stern and a man matching Larry Corby's description removing objects from the BMW and, later, placing a large, heavy, green plastic bag in the trunk. Later that day, when Stern's house was searched, many similar garbage bags containing marijuana were seized. Fifty–five minutes after Corby's departure from Stern's house, authorities spotted the BMW parked in the driveway of a residence at 12509 Sunrise Drive N.E. The BMW remained there for over an hour, but the agents apparently did not see anyone unload anything from the trunk. The affiant did say, however, that "[t]he reliable informant" had previously pointed out the Sunrise Drive address as the home of "'Walter,' who is also another of Judy Stern's main distributors." The affidavit does not mention how the informant knew that Walter was a "distributor." Finally, the affiant said that the federal agents saw several vehicles at the Sunrise address which were registered to "Sharon [sic] and Walter Jackson."

Based upon the above information, Federal Magistrate John Weinberg issued a warrant to search the Sunrise Drive residence. Federal agents executed the warrant on March 10, 1981, and seized a large quantity of marijuana and cash. Thereafter, the Kitsap County prosecutor charged the Jacksons with possession of over 40 grams of

marijuana.

The Jacksons moved to suppress the marijuana, arguing that the search warrant was invalid. The trial court denied the motion, and both defendants were subsequently found guilty. The Court of Appeals, Division Two, held that the search warrant was valid under the "totality of the circumstances" test established in *Illinois v. Gates*, ___ U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) and affirmed both convictions by unpublished opinion. *State v. Jackson*, 36 Wn. App. 1040 (1984).

Prior to the Court's decision in *Gates*, Fourth Amendment analysis utilized the *Aguilar–Spinelli* 2–pronged test for evaluating the existence of probable cause in relation to informants' tips. For an informant's tip (as detailed in an affidavit) to create probable cause for a search warrant to issue: (1) the officer's affidavit must set forth some of the underlying circumstances from which the informant drew his conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; and (2) the affidavit must set forth some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. *Aguilar*, at 114; *Spinelli*, at 413.

After nearly 15 years, the United States Supreme Court abandoned the *Aguilar–Spinelli* test in *Gates*. The Court opined that "it is wiser to abandon the 'two–pronged test' established . . . in *Aguilar* and *Spinelli*" in favor of a "totality of the circumstances" approach. *Gates*, 103 S. Ct. at 2332. Under this nebulous standard, the issuing magistrate is to make a "practical, common–sense decision whether . . . there is a fair probability" that the evidence sought will be found in the place to be searched. *Gates*, 103 S. Ct. at 2332.

The principal difference between the *Gates* approach and the *Aguilar–Spinelli* rule is that "veracity" and "basis of knowledge", while still relevant, are no longer both essential. Under *Gates*, a "deficiency" on either of these "prongs" may "be compensated for" by a "strong showing"

on the other prong. *Gates,* 103 S. Ct. at 2329. The "totality of the circumstances" analysis downgrades the veracity and basis of knowledge elements and makes them only "relevant considerations." *Gates,* 103 S. Ct. at 2329. Thus,

> [t]he task of the issuing magistrate is simply to make a practical, common–sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates,* 103 S. Ct. at 2332. The task of a reviewing court, the *Gates* majority makes plain, is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates,* 103 S. Ct. at 2332. In other words, the warrant is to be upheld as long as there is a *substantial basis* for a *fair probability* that evidence will be found in a particular case. As concurring Justice White read the majority opinion, the Court holds that

> if an affidavit contains anything more [than "bare conclusions"], it should be left to the issuing magistrate to decide, based solely on "practical[ity]" and "commonsense," whether there is a fair probability that contraband will be found in a particular place.

*Gates,* 103 S. Ct. at 2350 (White, J., concurring). *Accord, Massachusetts v. Upton,* __ U.S. __, 80 L. Ed. 2d 721, 104 S. Ct. 2085 (1984).

In Washington, the *Aguilar–Spinelli* test has been an important method of evaluating informants' tips under both the Fourth Amendment and Const. art. 1, § 7. *See, e.g., State v. Woodall,* 100 Wn.2d 74, 666 P.2d 364 (1983); *State v. Fisher,* 96 Wn.2d 962, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982); *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977); *State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890 (1968).

Underlying the *Aguilar–Spinelli* test is the basic belief that the determination of probable cause to issue a warrant must be made by a magistrate, not law enforcement officers who seek warrants. To perform the constitutionally pre-

scribed function, rather than being a rubber stamp, a magistrate requires an affidavit which informs him of the underlying circumstances which led the officer to conclude that the informant was credible and obtained the information in a reliable way. Only in this way (as the Court emphasized in *Aguilar* and *Spinelli*) can the magistrate make the proper independent judgment about the persuasiveness of the facts relied upon by the officer to show probable cause. *Spinelli*, at 412–16; *Aguilar*, at 110–15.

The two prongs of the *Aguilar–Spinelli* test have an independent status; they are analytically severable and each insures the validity of the information. The officer's oath that the informant has often furnished reliable information in the past establishes general trustworthiness. While this is important, it is still necessary that the "basis of knowledge" prong be satisfied—the officer must explain how the informant claims to have come by the information in this case. The converse is also true. Even if the informant states how he obtained the information which led him to conclude that contraband is located in a certain building, it is still necessary to establish the informant's credibility. *See Woodall*, at 76–78; *Fisher*, at 965–66; *Partin*, at 903–04.

The most common way to satisfy the "veracity" prong is to evaluate the informant's "track record", *i.e.,* has he provided accurate information to the police a number of times in the past? *Woodall*, at 76; *Fisher*, at 965; *see also* 1 W. LaFave, *Search and Seizure* § 3.3(b) (1978). If the informant's track record is inadequate, it may be possible to satisfy the veracity prong by showing that the accusation was a declaration against the informant's penal interest. *See State v. Bean*, 89 Wn.2d 467, 572 P.2d 1102 (1978); 1 W. LaFave § 3.3(c).

To satisfy the "basis of knowledge" prong, the informant must declare that he personally has seen the facts asserted and is passing on firsthand information. *See Partin*, at 903–04; 1 W. LaFave § 3.3(d). If the informant's information is hearsay, the basis of knowledge prong can be satisfied if there is sufficient information so that the hearsay estab-

lishes a basis of knowledge. *See United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973); *State v. Yaw,* 58 Hawaii 485, 572 P.2d 856 (1977); 1 W. LaFave § 3.3(d).

Finally, if the informant's tip fails under either or both of the two prongs of *Aguilar–Spinelli,* probable cause may yet be established by independent police investigatory work that corroborates the tip to such an extent that it supports the missing elements of the *Aguilar–Spinelli* test. *Spinelli,* at 417; *Illinois v. Gates,* ___ U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317, 2347–48 (1983) (White, J., concurring); 1 W. LaFave § 3.3(f). The independent police investigations should point to suspicious activity, "'*probative indications of criminal activity* along the lines suggested by the informant". *United States v. Canieso,* 470 F.2d 1224, 1231 (2d Cir. 1972); Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards,* 81 Yale L.J. 703, 716 (1972). Merely verifying "innocuous details", commonly known facts or easily predictable events should not suffice to remedy a deficiency in either the basis of knowledge or veracity prong. *See, e.g., United States v. Montgomery,* 554 F.2d 754, 757–58 (5th Cir. 1977); *Spinelli,* at 414; 1 W. LaFave § 3.3(f); Rebell, at 715–20; Kamisar, *Gates, "Probable Cause," "Good Faith," and Beyond,* 69 Iowa L. Rev. 551, 558–66 (1984). Corroboration of public or innocuous facts only shows that the informer has some familiarity with the suspect's affairs. Such corroboration only justifies an inference that the informer has some knowledge of the suspect and his activities, not that criminal activity is occurring. Corroboration of the informer's report is significant only to the extent that it tends to give substance and verity to the report that the suspect is engaged in criminal activity. Note, *The Informer's Tip as Probable Cause for Search or Arrest,* 54 Cornell L. Rev. 958, 967 (1969); Kamisar, at 567.

In the present case, the State asks us to reject this established jurisprudence and follow, blindly, the lead of the United States Supreme Court. This we are neither required nor inclined to do.

■ Prior reliance on federal precedent and federal constitutional provisions do not preclude us from taking a more expansive view of Const. art. 1, § 7, where the United States Supreme Court determines to further limit federal guaranties in a manner inconsistent with our prior pronouncements. *See State v. Fitzsimmons,* 94 Wn.2d 858, 620 P.2d 999 (1980).

For example, recently we held that the substantial difference in wording between the Fourth Amendment and Const. art. 1, § 7 mandates that the freedom from unreasonable searches and seizures be interpreted more expansively under the state constitution than under the federal constitution. *State v. Chrisman,* 100 Wn.2d 814, 818, 676 P.2d 419 (1984); *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982); *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980); *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978). Moreover, this court has held that an informant's tip may constitutionally provide police with grounds to stop a person *only* if it demonstrates some "indicia of reliability". *State v. Sieler,* 95 Wn.2d 43, 46–47, 621 P.2d 1272 (1980). In *Sieler,* this court enumerated the required criteria which must be met to create these "indicia of reliability":

> While the police may have a duty to investigate tips which sound reasonable, [1] absent circumstances suggesting the informant's reliability, or some corroborative observation which suggest either [2] the presence of criminal activity or [3] that the informer's information was obtained in a reliable fashion, a forcible stop based solely upon such information is not permissible.

*Sieler,* at 47 (quoting *State v. Lesnick,* 84 Wn.2d 940, 944, 530 P.2d 243, *cert. denied,* 423 U.S. 891 (1975)). We held, even prior to *Aguilar,* that an anonymous informant's tip does not, by itself, establish probable cause. *State v. Knudsen,* 154 Wash. 87, 96–97, 280 P. 922 (1929), *cert. denied,* 281 U.S. 745 (1930). There must exist, in addition to the anonymous tip, some indicia of reliability. *See State v. Zupan,* 155 Wash. 80, 283 P. 671 (1929); *State v. Ban-*

*tam,* 163 Wash. 598, 1 P.2d 861 (1931).

We are not persuaded by the United States Supreme Court's rationale for departing from the *Aguilar–Spinelli* standard. Furthermore, it is inapplicable in the context of Const. art. 1, § 7 analysis.

The Court's reasoning consists of the following propositions: (1) that probable cause is a fluid concept not readily, or even usefully, reduced to a neat set of legal rules; (2) that the two elements of the *Aguilar–Spinelli* test should not have such independent status, so that a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability; (3) that the new approach is justified by the fact that affidavits are normally drafted by nonlawyers; (4) that after–the–fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review; (5) that if affidavits are subjected to greater scrutiny police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search; and (6) that the strictures of the 2–pronged test cannot avoid seriously impeding the task of law enforcement, as under that test anonymous tips would be of greatly diminished value in police work. *Gates,* 103 S. Ct. at 2328–34.

These propositions do not support abandonment of the *Aguilar–Spinelli* standard in Const. art. 1, § 7 analysis. As to proposition (1), the 2–pronged test has not reduced probable cause to a neat set of legal rules. Rather, the test simply provides a structure for probable cause inquiries, and if not rigidly applied allows sufficient room for assessment of the unique facts of the particular case. As Justice Brennan notes in his dissent:

> Neither the standards nor their effects are inconsistent with a "practical, nontechnical" conception of probable cause. Once a magistrate has determined that he has information before him that he can reasonably say has been obtained in a reliable way by a credible person, he

has ample room to use his common sense and to apply a practical, nontechnical conception of probable cause.

*Gates,* 103 S. Ct. at 2357–58 (Brennan, J., dissenting); *see also State v. Woodall,* 100 Wn.2d 74, 78, 666 P.2d 364 (1983); *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982).

As for proposition (2), a strong showing on one prong should not be considered to overcome a deficiency in the other prong. A claim of firsthand observation should not compensate for the lack of any assurance that the informant is credible. A liar could allege firsthand knowledge in great detail as easily as could a truthful speaker. Conversely, a strong showing of general trustworthiness should not compensate for the failure to explain how the informant came by his information. The qualities that demonstrate truthfulness have nothing to do with demonstrating the basis of knowledge on a particular occasion. Truthful persons can be the bearers of hearsay, rumor, gossip, or bare conclusions, as surely as can be liars. Moreover, as Justice White noted in his concurrence regarding this proposition:

> If this is so, then it must follow *a fortiori* that "the affidavit of an officer, known by the magistrate to be honest and experienced, stating that [contraband] is located in a certain building" must be acceptable. It would be "quixotic" if a similar statement from an honest informant, but not one from an honest officer, could furnish probable cause. But we have repeatedly held that the unsupported assertion or belief of an officer does not satisfy the probable cause requirement.

(Citations omitted.) *Gates,* 103 S. Ct. at 2350 (White, J., concurring). This is why, as Justice White declared in his separate opinion in *Gates,* the probable cause standard necessitates "some showing of facts from which an inference may be drawn that the informant is credible and that his information was obtained in a reliable way." *Gates,* 103 S. Ct. at 2350 (White, J., concurring).

Proposition (3) seems to cut the opposite direction. Because laymen police and magistrates must often make

the probable cause determination in the first instance, that is good reason, as Justice White pointed out in *Gates,* for the Court "to provide more precise guidance" rather than "totally abdicating our responsibility in this area." *Gates,* 103 S. Ct. at 2351 (White, J., concurring). The *Aguilar–Spinelli* standard, as Justice Brennan stated in his dissent, "Help[s] to structure probable cause inquiries and, properly interpreted, may actually help a non–lawyer magistrate in making a probable cause determination." *Gates,* 103 S. Ct. at 2358 (Brennan, J., dissenting). By stressing the independent importance of the veracity and basis of knowledge elements and by identifying various ways in which each requirement can be satisfied, the *Aguilar–Spinelli* test provides lay persons, police officers and magistrates with a useful framework within which to operate. By comparison, the *Gates* approach, consisting largely on the use of common sense, does not afford any guidance. *See* Kamisar, at 571–72.

As for proposition (4), review of the sufficiency of an affidavit was not de novo under the prior test. In both *Aguilar* and *Spinelli,* the Court reaffirmed the principle that a magistrate's determination of probable cause is entitled to considerable deference. *Aguilar,* at 111; *Spinelli,* at 419; *see also Woodall,* at 78.

Proposition (5) also is unpersuasive as there has been a strong preference for the warrant procedure. *See Woodall,* at 78; *State v. Chrisman,* 100 Wn.2d 814, 676 P.2d 419 (1984).

As to proposition (6), unless it can be shown that the tip came from an honest or reliable person who acquired the information in the particular case in a reliable way, an arrest or search should not be permitted on the basis of the tip. If the anonymous tip is sufficiently supplemented by independent police investigation, then the police are permitted to make a search or seizure. The police need not observe criminal behavior; information that significantly corroborates the informant's tip that the suspect is engaged in criminal activity along certain lines may suffice. More-

over, even if a tip, standing alone or partially corroborated, does fall short of probable cause it still has a place in law enforcement; it still may contribute to the solution of the crime, by prompting a police investigation, or further investigatory work that does establish that requisite probable cause. Kamisar, at 576.

Const. art. 1, § 7 confers upon the citizenry of this state a right to be free from unreasonable governmental intrusions. This constitutional right can be protected only if the affidavit informs the magistrate of the underlying circumstances which led the officer to conclude that the informant was credible and obtained the information in a reliable way. Only in this way can the magistrate make the properly independent judgment about the persuasiveness of the facts relied upon by the officer to show probable cause. The *Gates* totality of the circumstances approach lacks sufficient specificity and analytical structure to adequately inform magistrates as to the appropriate standards required to protect the right of privacy secured by Const. art. 1, § 7. Thus, we decline the State's invitation to follow the United States Supreme Court's lead in abandoning well established protections against unreasonable searches.

Because we reject the *Gates* "totality of the circumstances" approach, we must now test the warrant under the *Aguilar–Spinelli* test.[1] As discussed above, under this test a determination of probable cause requires establishing both the informant's basis of knowledge and the informant's credibility.

The credibility prong is established in this action through the showing that Howell was a known informant who had provided federal investigators with highly reliable information about Stern's drug import operation. The fact that Howell had provided accurate information about other facets of Stern's drug trafficking operation lends credence to his assertion that Walter Jackson was a drug distributor.

---

[1]The Court of Appeals did not reach this issue because it adopted the analysis of *Illinois v. Gates,* ___ U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983).

Generally, when an informant is right about some material things, he can be regarded more probably right about other, unverified facts. *See* 1 W. LaFave, at 508.

The basis of knowledge prong is more difficult to establish. The informant's tip indicated that "Walter" Jackson and "Larry" Corby were Stern's chief drug distributors. The informant additionally showed the investigators "Walter's" residence at 12509 Sunrise Drive N.E. Neither the Jackson affidavit nor the Stern affidavit supporting the search warrant indicates any underlying basis for this statement. It may be inferred that the informant obtained this information from his involvement in the Stern operation and thereby was not dealing in casual rumors. However, there is no indication of firsthand knowledge that Walter Jackson was one of Stern's drug distributors, nor that Howell received this information from Stern as a declaration against penal interest.

This type of bare allegation is insufficient to meet the basis of knowledge prong. In *State v. Sieler,* 95 Wn.2d 43, 48–49, 621 P.2d 1272 (1980), this court stated:

> Some underlying factual justification for the informant's conclusion must be revealed so that an assessment of the probable accuracy of the informant's conclusion can be made. It simply "makes no sense to require some 'indicia of reliability' that the informer is personally reliable but nothing at all concerning the source of his information . . ." 3 W. LaFave, [*Search and Seizure*] § 9.3, at 100. This additional requirement helps prevent investigatory detentions made on the basis of a tip provided by an honest informant who misconstrued innocent conduct. It also reduces such detentions when an informant, who has given accurate information in the past, decides to fabricate an allegation of criminal activity. *Cf.* Comment, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards,* 81 Yale L.J. 703, 713–14 (1972) (noting that informants who have given reliable information in the past not infrequently make false allegations).
>
> Even if the reliability of the informant had been established in this case, the detention and questioning of defendants [were] unconstitutional. The police conducted

an investigatory detention based upon an informant's bare conclusion unsupported by any factual foundation known to the police. Officer Sweeney's commendable but unsuccessful attempt to obtain such a foundation prior to confronting the defendants does not change the result. Of course neither does the discovery of drugs after the detention justify the police conduct.

Even though the informant's tip fails to satisfy the basis of knowledge prong, probable cause may yet be established by independent police investigatory work that corroborates the tip to such an extent that it supports the missing element.

In *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), a reliable informant told police Ker had been purchasing marijuana from Murphy. This information was apparently hearsay and lacked a basis of knowledge. Surveilling agents, however, observed Ker meeting Murphy, a known marijuana dealer, under circumstances similar to those in which Murphy was known to have made a marijuana sale to another person a day earlier. The Court was unwilling to say that this observation alone amounted to probable cause, but it did give rise to a strong suspicion which was raised to probable cause when considered with the informer's tip. *See also People v. Jefferson,* 25 Ill. App. 3d 445, 323 N.E.2d 495 (1974); *Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908 (1974); *People v. Dasenbrock,* 96 Ill. App. 3d 625, 421 N.E.2d 948 (1981).

In the instant action, independent police corroboration verified that "Walter" did reside at the given location. Federal agents saw a BMW arrive at the Stern residence. The BMW was registered to Larry Corby. Both "Walter" and "Larry" had been identified by the reliable informant as distributors for Stern. On the afternoon of March 9, the agents saw Stern and a man matching Larry Corby's description removing objects from the BMW and, later, placing a large, heavy, green plastic bag in the trunk. Later that day, when Stern's house was searched, many similar garbage bags containing marijuana were seized. Fifty–five

minutes after Corby's departure from Stern's house, authorities spotted the BMW parked at the Jackson residence at 12509 Sunrise Drive N.E. The BMW remained there for over an hour, but the agents apparently did not see anyone unload anything from the trunk.

While we acknowledge that the propriety of issuing a warrant under the facts of this case is debatable, the deference due the issuing magistrate tips the balance in favor of upholding the warrant.

We therefore find that the corroboration of the credible informant's tip, that Walter Jackson was a distributor in the Stern drug dealing operation, is sufficient to satisfy the *Aguilar–Spinelli* test. The two prongs of this test being met, the warrant was valid and the convictions affirmed.

BRACHTENBACH, DOLLIVER, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J., concurs in the result.

DIMMICK, J. (concurring in the result)—I concur in the result but disagree with the majority's conclusion that this is a proper case in which to decide the propriety of following *Illinois v. Gates,* __ U.S. __, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). Since the majority holds that the warrant satisfied the stricter requirements of the *Aguilar–Spinelli* test, it is unnecessary to decide whether this court should follow *Gates.*

UTTER, J. (concurring in part, dissenting in part)—I agree with the majority's adoption, under Const. art. 1, § 7, of the *Aguilar–Spinelli* test for establishing the reliability of information received from an informant. My disagreement with the majority's opinion is limited to its application of this test to the facts at bar.

The majority recognizes the affidavit did not indicate the basis for the informant's assertion that petitioner, Walter Jackson, was a marijuana distributor for Judith Stern. It, however, finds the affidavit sufficient to establish probable

cause on the basis of "corroborative" police investigatory work.

The "corroborating evidence" upon which the majority rests its conclusion merely established: (1) that a suspected drug trafficker, Larry Corby, was seen at petitioner's residence shortly after leaving the residence of another suspected drug trafficker, Judith Stern; and (2) petitioner resided at the address indicated by the informant. The investigating officers did not see Corby take any suspicious-looking packages into petitioner's home; nor did they see any other suspicious activity. They merely saw Corby remain at petitioner's residence for over an hour and then drive away. The most this investigation corroborated was that petitioner was acquainted with Larry Corby and that he lived at 12509 Sunrise Drive N.E. There was nothing more to corroborate the informant's statement that petitioner was one of Stern's "main distributors."

Was verification of an apparently innocent association sufficient corroboration of the informant's bare allegation to establish probable cause to search?

Many courts have relied on seemingly innocent activity to corroborate an informer's tip which fails to satisfy *Aguilar–Spinelli*'s "basis of knowledge" prong. 1 W. LaFave, *Search and Seizure* § 3.3(f) (1978) and cases cited therein. What these courts have failed to recognize is that such limited corroboration bolsters only the informant's credibility, not the reliability of his information that a crime is underway.

As Justice White noted in his concurrence to *Spinelli v. United States,* 393 U.S. 410, 423, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), corroboration of innocent details does not make existence of criminal activity sufficiently probable to justify the issuance of a search warrant. In challenging the Court's reliance on *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959), for this proposition, he stated:

The thrust of *Draper* is not that the verified facts have independent significance with respect to proof of the

[unverified fact]. The argument instead relates to the reliability of the source: because an informant is right about some things, he is more probably right about other facts, usually the critical, unverified facts.

But the Court's cases have already rejected for Fourth Amendment purposes the notion that the past reliability of an officer is sufficient reason for believing his current assertions. . . . The informant could still have gotten his information . . . from others about whom nothing is known or could have inferred the presence of narcotics from circumstances which a magistrate would find unacceptable.

*Spinelli,* at 427 (White, J., concurring).

Without corroboration of the informant's assertion that criminal activity is taking place, or a stated basis supporting his assertion, the issuing magistrate has no independent basis upon which to determine probable cause. He or she must rely totally upon the word of the informant who, although reliable in the past, may be mistaken or acting upon a hunch.

As one court has perceptively noted:

Partial verification of an unattributed tale does not, by its very nature, pinpoint the source or sources of the tale, nor does it certify the validity of the possible conclusions interwoven therein. "Basis of knowledge" still requires, explicitly or implicitly, an ascertainable source for each item of raw, primary data. Partial verification does not serve to provide that. The remedy has no bearing on the problem.

(Footnote omitted.) *Stanley v. State,* 19 Md. App. 507, 532, 313 A.2d 847 (1974). *See also* 1 W. LaFave, *Search and Seizure* § 3.3, at 561–64 (1978).

The majority purports to recognize the need that corroboration relate to the alleged criminal activity.

Corroboration of public or innocuous facts only shows that the informer has some familiarity with the suspect's affairs. Such corroboration only justifies an inference that the informer has some knowledge of the suspect and his activities, not that criminal activity is occurring. Corroboration of the informer's report is significant only to the

extent that it tends to give substance and verity to the report that the suspect is engaged in criminal activity. Majority, at 438. Yet, here, it finds this prong satisfied by the mere presence of a suspected drug trafficker at petitioner's residence. This holding is inconsistent with the many cases in which we have recognized both the "veracity" and "basis of knowledge" prongs as essential to establishing an independent basis for a finding of probable cause. *See* majority, at 436–38, and cases cited therein.

As we here incorporate the *Aguilar–Spinelli* test into Const. art. 1, § 7, we are free to interpret it according to the purpose it was meant to serve. Justice White's sound reasoning in *Spinelli* and the majority's recognition that independent corroboration should give substance to a bare allegation of criminal activity must receive strict adherence. Because the majority has failed to do so in this case, I dissent.

WILLIAMS, C.J., concurs with UTTER, J.