IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34478-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FELIPE ERNESTO GONZALEZ- | ) | |
| HERNANDEZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Felipe Gonzalez-Hernandez[1] appeals his

conviction for possession of methamphetamine with intent to deliver. He primarily

argues that his conviction should be reversed and his case dismissed because the State

unconstitutionally seized evidence. We disagree with this and other arguments and

affirm.

---

[1] Although the appellant is referred to as both Gonzalez-Hernandez and
Hernandez-Gonzalez throughout the record, we refer to him as Gonzalez-Hernandez in
the present appeal.

FACTS

In 2016, Frank Randall worked as a narcotic's detective for the Klickitat County Sheriff's Office.  In early February, he approached an inmate about working as a confidential informant.  To protect his identity, we will refer to the inmate as John Smith. Smith agreed to work as a confidential informant and told Detective Randall that he knew a possible dealer by the name of Felipe.

On February 9, Smith went with Detective Randall to purchase narcotics from Felipe.  They drove to where Smith believed Felipe lived, a trailer on Spring Street in White Salmon, Washington.  Following protocols for controlled buys, Smith purchased methamphetamine from Felipe in the trailer.

Immediately following the buy, a small piece of methamphetamine was found in Smith's pocket.  Smith claimed the bag that contained the methamphetamine was open when he put it in his pocket.

Detective Randall investigated who Felipe might be.  He obtained a copy of a Washington State Department of Licensing (DOL) license of a Felipe who supposedly lived at the trailer address.

On February 10, Detective Randall again met with Smith. Detective Randall showed the DOL license to Smith. Smith confirmed that the picture of Felipe on the license was the same person from whom he had purchased the methamphetamine. The name of the person, according to the license, was Felipe Gonzalez-Hernandez.

That day, Smith completed another controlled buy from Felipe in the trailer. Detective Randall saw Felipe and visually confirmed that Felipe was the person pictured on the DOL license. On February 18, Smith completed a third controlled buy from Felipe in the trailer.

On March 1, Detective Randall learned that Smith had pinched, or attempted to steal, drugs from an unrelated buy. This caused him to stop using Smith as a confidential informant.

On March 4, Detective Randall applied for a search warrant to search the subject trailer. The primary purpose for the warrant was to obtain evidence of dominion and control. In the application, Detective Randall disclosed that a piece of methamphetamine was found on Smith after the February 9 buy and that Smith had recently pinched drugs from an unrelated buy. On March 4, a judge authorized the requested search warrant. The warrant authorized the sheriff's department to search for and seize the following items in the trailer:

> Items or articles of personal property tending to show the identity of person(s) in ownership dominion or control of said premises and/or vehicles(s) including but not limited to keys, canceled mail envelopes, rental agreements and receipts, utility and telephone bills, telephone/address books, photographs, gas receipts, insurance papers, notices from governmental agencies, and the like.
>
> Financial records of person(s) in control of the premises including tax returns, bank accounts, loan applications, income expense records, safe deposit keys and records, property acquisition and notes.
>
> Computer equipment, programs, storage disks and printouts, evidencing the distribution of controlled substances, the expenditure of currency or currency equivalents.

Search Warrant signed by Judge Rick Hansen (Mar. 10, 2016) at 2-3. The warrant did not list the crime being investigated, nor did it expressly incorporate Detective Randall's affidavit.

On March 8, Detective Randall executed the search warrant. Felipe, later identified as Felipe Gonzalez-Hernandez, was present. Detective Randall saw scales, bags, and a bag containing methamphetamine on the kitchen table. He arrested Gonzalez-Hernandez, advised him of his *Miranda*[2] warnings, and placed him in custody. Detective Randall stopped his search and applied for a warrant to search for illegal drugs.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

The application contained Detective Randall's observations of the drugs and drug paraphernalia he saw when he executed the first search warrant. The application contained the exact information as the prior application, with one exception: It omitted the paragraph that disclosed Smith had pinched drugs from an unrelated buy. On March 8, a judge authorized the second search warrant.

Detective Randall returned to the residence and executed the second search warrant. Law enforcement seized bags, scales, cell phones, cash, firearms, and 19.1 grams of methamphetamine. The State charged Gonzalez-Hernandez with possession of a controlled substance with intent to deliver.

*Procedure*

Prior to trial, defense counsel challenged the second search warrant. Defense counsel argued that evidence seized based on that warrant should be suppressed because Detective Randall withheld information crucial to Smith's lack of veracity. The trial court denied the motion reasoning that Detective Randall's observations of the drugs and drug paraphernalia inside the trailer, rather than Smith's veracity, were central to the issuance of the second search warrant.

The trial court asked whether the first search warrant might be invalidated on the basis that Detective Randall withheld information about Smith. Defense counsel

5

responded that the first application did not omit the information. Defense counsel

conceded that the judge reviewing the first application had the opportunity to consider

Smith's lack of veracity when determining whether to issue the first search warrant.

On the morning of trial, the State sought to admit evidence of the three controlled

buys. The State argued that the three prior buys were evidence of intent. Defense

counsel argued that the prior buys were inadmissible under ER 404(b) as evidence of

prior bad acts. The trial court explained its reasoning on the record. The trial court found

that the evidence of the prior buys was relevant to show intent to deliver and that

admission of the evidence was not outweighed by its unfair prejudice. The trial court

therefore ruled that the evidence would be admissible. During closing, the State argued

that the prior controlled buys helped establish that Gonzalez-Hernandez had the intent to

distribute methamphetamine.

The jury found Gonzalez-Hernandez guilty of the charged crime. At sentencing,

the trial court asked Gonzalez-Hernandez about his ability to work following his release.

Gonzalez-Hernandez answered that he would have a job waiting. The trial court

then assessed legal financial obligations (LFOs), including a $2,000 fine under

RCW 69.50.430. The amount of the fine was due to it being Gonzalez-Hernandez's third

VUCSA[3] offense.

Gonzalez-Hernandez appealed.

## ANALYSIS

A.    THE SECOND WARRANT WAS NOT INVALIDATED BY THE OVERBROAD FIRST
       WARRANT

Gonzalez-Hernandez raises at least two unpreserved challenges to the first search

warrant: (1) Smith's reliability was not sufficiently established, and (2) the warrant was

overbroad and permitted an exploratory search. He then argues, because the officers were

not lawfully in the trailer when they observed the methamphetamine and other

paraphernalia, the second search warrant was invalid.

Citing RAP 2.5(a)(3), Gonzalez-Hernandez argues that we should review these

unpreserved challenges because they involve manifest errors affecting a constitutional

right. In the alternative, he argues his trial counsel provided ineffective assistance by not

raising these arguments. Where the underlying arguments on appeal are deficient, it is

sometimes more expedient to dispose of deficient arguments than to inquire whether

reviewability is even appropriate. This is such a case.

---

[3] Violation of the Uniform Controlled Substances Act, chapter 69.50 RCW.

> ### 1. It was unnecessary to establish Smith's reliability

Gonzalez-Hernandez next argues that Smith's reliability was not established in the first search warrant, and it therefore should be invalidated.

Although abandoned in the federal system, under Washington law, courts still evaluate an informant's reliability under the two-pronged *Aguilar-Spinelli* test. *State v. Jackson*, 102 Wn.2d 432, 436, 438, 688 P.2d 136 (1984) (citing *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), *but adhered to by Jackson*, 102 Wn.2d 432). Under this approach, to create probable cause the officer's affidavit must establish (1) the reliability of the informant's basis of knowledge, and (2) the veracity of the informant. *Jackson*, 102 Wn.2d at 435. If the informant's tip fails under either prong, as Smith's likely would here, "probable cause may yet be established by independent police investigatory work that corroborates the tip . . . ." *Id.* at 438.

Here, three controlled buys corroborated Smith's claims that Gonzalez-Hernandez sold methamphetamine. The basis of the first warrant was not grounded in Smith's claim that he could buy methamphetamine from Gonzalez-Hernandez. It was grounded in the three controlled buys during which Smith purchased methamphetamine from inside

Gonzalez-Hernandez's trailer. And because the first search warrant was properly issued, the second search warrant is not rendered infirm.

> ### 2. *The first warrant was overbroad*

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This amendment was designed to prohibit "general searches" and to prevent "'general, exploratory rummaging in a person's belongings. . . .'" *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992) (quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976)). Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

These constitutional provisions impose two requirements for search warrants. First, a warrant can be issued only if supported by probable cause. *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and the evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140,

9

977 P.2d 582 (1999).  Probable cause requires a nexus both between criminal activity and the item to be seized and between the item to be seized and the place to be searched.  *Id.*

Second, "a search warrant must be sufficiently definite so that the officer executing the warrant can identify the property sought with reasonable certainty."  *State v. Stenson*, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997).  The degree of particularity "varies according to the circumstances and the type of items involved."  *Id.*  The particularity requirement serves the dual functions of "limit[ing] the executing officer's discretion" and "inform[ing] the person subject to the search what items the officer may seize."  *State v. Riley*, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993).

Thus, a warrant can be overbroad either because (1) it fails to describe with particularity items for which probable cause exists, or (2) it describes, particularly or otherwise, items for which probable cause does not exist.  *State v. Maddox*, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003), *aff'd*, 152 Wn.2d 499, 98 P.3d 1199 (2004).  Here, the first warrant was invalid based on the second type of overbroad challenge.  The second paragraph of the first warrant under "SEIZE THE FOLLOWING PROPERTY" permitted unrestricted seizure of financial records.  Search Warrant signed by Judge Rick Hansen (Mar. 10, 2016) at 2.  Also, a portion of the third paragraph under the same heading was not qualified by the language "evidencing the distribution of controlled substances."

10

Search Warrant, *supra*, at 3. To the extent that the first search warrant was not restricted to evidence of dominion or control or evidence of distribution of controlled substances, the first warrant was overbroad. Had the first warrant specified the crime under investigation or had it expressly incorporated Detective Randall's affidavit, the limitations would be obvious and the first warrant would not have been overbroad. *See Riley*, 121 Wn.2d at 27-29.

3.    *Entry into the trailer was permitted by the valid portions of the first warrant*

"Under the severability doctrine, infirmity of parts of a warrant requires the suppression of evidence seized pursuant to that part of the warrant but does not require suppression of anything seized pursuant to valid parts of the warrant." *Maddox*, 116 Wn. App. at 806 (internal quotation marks omitted). In *Maddox*, we set forth five requirements that must be met for a court to uphold a seizure on the basis of severability doctrine:

> First, the warrant must lawfully have authorized entry into the premises. . . .
> Second, the warrant must include one or more particularly described items for which there is probable cause. . . .
> Third, the part of the warrant that includes particularly described items supported by probable cause must be significant when compared to the warrant as a whole. . . .
> Fourth, the searching officers must have found and seized the disputed items while executing the valid part of the warrant (i.e., while

11

        searching for items supported by probable cause and described with
particularity). . . .
        . . . .
        Fifth, the officers must not have conducted a general search, i.e., a
search in which they "flagrantly disregarded" the warrant's scope. . . .

*Id.* at 807-08.

Here, all five requirements are met. First, the warrant was lawful in that probable

cause supported the search of the trailer for dominion and control, and distribution of

controlled substances. Second, the warrant described with particularity a number of items

related to dominion and control, and distribution of controlled substances. Third, the

valid portions of the warrant were significant portions of the overall warrant. Once

inside the trailer, law enforcement saw the methamphetamine and paraphernalia on the

kitchen table. At that point, law enforcement ceased the search and applied for a second

search warrant. Because of this, the fourth requirement is satisfied, in that the portions of

the warrant that were overbroad did not lead to the seizure of evidence. Fifth, the officers

did not engage in a general search. We conclude that law enforcement's entry into the

trailer was lawful and that the items viewed on the kitchen table permitted law

enforcement to apply for the second search warrant.

B. NO ERROR IN ADMITTING EVIDENCE OF THE THREE CONTROLLED BUYS

Citing ER 404(b), Gonzalez-Hernandez argues that the trial court erred in admitting evidence of the three controlled buys. He claims that the sole purpose of the evidence was to show his propensity to commit the current offense. We disagree.

Whether a trial court erred in admitting evidence in violation of ER 404(b) is reviewed for abuse of discretion. *State v. Yarbrough*, 151 Wn. App. 66, 81, 210 P.3d 1029 (2009). When a court admits prior bad acts under ER 404(b), it must (1) determine the purpose for which the evidence is offered, (2) determine the relevance of the evidence, and (3) balance on the record the probative value of the evidence against its prejudicial effect. *State v. Campbell*, 78 Wn. App. 813, 821, 901 P.2d 1050 (1995).

Here, the trial court determined that evidence of the three controlled buys was relevant. The three controlled buys, all one month prior to the charged offense, were relevant because they showed that Gonzalez-Hernandez intended to sell the methamphetamine found in his trailer instead of merely using it for himself. The court then determined that the evidence was not more prejudicial than it was probative. The court reasoned that the State was not offering the evidence to prove the character of the defendant but, instead, was offering it to show intent to distribute.

13

The cases cited by Gonzalez-Hernandez all involve situations where the State attempted to admit prior unrelated crimes of the defendant. Br. of Appellant at 27, 29 (citing *State v. Holmes*, 43 Wn. App. 397, 400, 717 P.2d 766 (1986) (two prior juvenile burglary convictions were independent offenses) and *State v. Wade*, 98 Wn. App 328, 989 P.2d 576 (1999) (two prior convictions occurred 10 months and 14 months prior to present offense)). But here, the controlled buys were related to the crime. The three controlled buys, all within one month of the charged offense, were highly probative of what Gonzalez-Hernandez intended to do with the methamphetamine. Accordingly, we hold that the trial court did not abuse its discretion when it admitted evidence of the three controlled buys.

### C.    EFFECTIVE ASSISTANCE OF COUNSEL

Gonzalez-Hernandez claims that his defense counsel was ineffective by failing to challenge the first search warrant and by failing to request a limiting instruction to the ER 404(b) evidence. We disagree.

To demonstrate ineffective assistance of counsel, a defendant must show that defense counsel's representation was deficient and the deficient performance prejudiced the defendant. *State v. Hicks*, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (acknowledging that Washington has adopted the standards from *Strickland v. Washington*, 466 U.S. 668,

14

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Representation is deficient if it falls below an objective standard of reasonableness based on consideration of all the circumstances. *Hicks*, 163 Wn.2d at 486; *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice occurs when, but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Brousseau*, 172 Wn.2d 331, 352, 259 P.3d 209 (2011). If a party fails to satisfy one prong of the test, we need not consider the other prong. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

1.  *No prejudice for failing to challenge the first search warrant*

We first address whether failing to challenge the first search warrant constituted ineffective assistance of counsel. As noted above, the first search warrant was overbroad, but the permissible portions of the warrant permitted lawful entry into the trailer and application for the second warrant. For this reason, trial counsel's failure to challenge the first search warrant did not prejudice Gonzalez-Hernandez.

2.  *Legitimate trial strategy for not requesting a limiting instruction*

We next address whether failing to request a limiting instruction about the three prior drug buys constituted ineffective assistance of counsel.

We strongly presume that defense counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011). "To rebut this presumption, the

15

defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *Id.*

Here, Gonzalez-Hernandez was entitled to an instruction that told the jury that evidence of the three drug buys was admitted for the limited purpose of establishing intent. Such an instruction arguably would have further reminded the jury of this harmful evidence. Because the decision not to request a limiting instruction had a conceivable tactical basis, we reject Gonzalez-Hernandez's argument that his counsel was ineffective.

D.      PANEL DECLINES TO CONSIDER UNPRESERVED CLAIM OF ERROR

Gonzalez-Hernandez contends that the trial court erred in imposing the $2,000 fine under RCW 69.50.430(2). He argues the trial court found him indigent for purposes of appeal and that the $2,000 fine cannot be imposed on indigent defendants.

Gonzalez-Hernandez did not object to the $2,000 fine during sentencing. RAP 2.5(a) provides that an appellate court may refuse to review any claim of error not raised in the trial court. Although this rule has exceptions, Gonzalez-Hernandez does not claim that his argument falls within any of the exceptions. A majority of this panel declines to review this unpreserved claim of error.

E.    APPELLATE COSTS

Gonzalez-Hernandez requests that we deny the State an award of appellate costs in the event the State substantially prevails. The State has wholly prevailed. If the State seeks appellate costs, we defer the award of appellate costs to our commissioner in accordance with RAP 14.2.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____            _____
Korsmo, J.                                  Pennell, J.

17