[No. 9190-2-III.    Division Three.    March 9, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. FIDEL P. RODRIGUEZ, *Appellant.*

*Victor Lara* and *Schwab, Kurtz & Hurley,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Gregory Shogren, Deputy,* for respondent.

THOMPSON, C.J.—Fidel P. Rodriguez appeals his conviction for possession of cocaine, RCW 69.50.401. He contends a search warrant was issued without probable cause, and he was unlawfully detained and searched while the search warrant was being executed. We affirm.

On December 4, 1987, Grandview police officer Armando Martinez obtained a warrant to search an automobile. The warrant was based on an affidavit in which he made the following statement:

> That the Grandview Police Dept. Narcotic Investigative Unit received information from a citizen who while working on the heater radiator of the suspect vehicle, found a "spindle" with white powder in it. That the white powder, wrapped in a wood cutting permit paper, is [typical] of how cocaine and other drugs are wrapped in. That the spindle fell from underneath the dash of the suspected vehicle from where it was stored, to the right side of the ashtray, under the dash. That the citizen inspected the small package, saw the white powder, and reported this to the police. The affiant, has been a narcotic investigator for several years, and is acquainted with the packaging of cocaine, and other drugs, and that

the description of the item or package described by the citizen, is the same as how cocaine is stored and packaged. The suspect who brought the vehicle in to be repaired, is known to the Grandview Police Dept. Narcotic Investigative Unit as being a dealer of drugs. This Mexican male suspect, being approx. 5–9 in height, 160 lbs in weight, black thick hair, known to the Grandview Police Dept. Narcotic Investigative Unit as "Robavacas" which means cattle rustler in Spanish. That the woman who picked up the key to the vehicle, is the girlfriend of "Robavacas", and was also driving his pickup truck.

Later that day, officers stopped the car about 100 feet from the police station. Mr. Rodriguez, the driver and sole occupant of the car, indicated the car was his. Because the weather was bad, officers took the car to the nearby police station garage to search it. Within 15 minutes, officers found a bindle of cocaine under the dashboard.

While the car was being searched, Mr. Rodriguez was taken inside the police station. When Officer Martinez, carrying the bindle of cocaine, entered the room where he was being held, Mr. Rodriguez said, "That's mine". At trial,[1] Mr. Rodriguez testified he was locked in a room for about 10 minutes and was strip searched.

The court, sitting without a jury, found Mr. Rodriguez guilty, and sentenced him to 45 days in jail.

The first issue is whether the officer's affidavit established probable cause to search. The requirements for issuance of a search warrant based on an informant's tip are well established:

> When an informant's tip forms the basis for a search warrant, the affidavit in support of the warrant must establish the basis of information and credibility of the informant in order to evaluate the existence of probable cause. *State v. Jackson,* 102 Wn.2d 432, 433, 688 P.2d 136 (1984); *see Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,*

---

[1]No testimony was taken during the suppression hearing. The trial court's ruling on the suppression issue was based on the undisputed fact Mr. Rodriguez was detained at the police station. The defense did not contend during the hearing that Mr. Rodriguez was searched during the detention.

378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). The two prongs of the *Aguilar–Spinelli* test have an independent status and both are required to establish probable cause. *Jackson,* at 437. However, if the informant's tip fails under either or both of the prongs, probable cause may yet be established by independent police investigation that "corroborates the tip to such an extent that it supports the missing elements of the *Aguilar–Spinelli* test". *Jackson,* at 438. Independent investigations must point to ""*probative indications of criminal activity . . .'"* *Jackson,* at 438 (quoting *United States v. Canieso,* 470 F.2d 1224, 1231 (2d Cir. 1972)). Innocuous details do not suffice to remedy a deficiency under either the basis of knowledge or the veracity prong. *Jackson,* at 438.

*State v. Franklin,* 49 Wn. App. 106, 107–08, 741 P.2d 83, *review denied,* 109 Wn.2d 1018 (1987).

■ Mr. Rodriguez argues first that the affidavit fails to establish the basis of knowledge prong of the *Aguilar–Spinelli* test. *Aquilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). To satisfy this test, the informant may state that he has observed the asserted facts personally, and is passing on firsthand information. *State v. Jackson,* 102 Wn.2d 432, 437, 688 P.2d 136 (1984). Here, all information provided by the informant was based on personal observation: While working on the car, he found a "spindle" with white powder in it. The affiant officer concluded the "spindle" likely contained cocaine. He was amply qualified to make such a conclusion. The affidavit satisfies the basis of knowledge prong.

■ Mr. Rodriguez also contends the affidavit fails to satisfy the credibility prong. When police receive information from an uninvolved witness or victim of a crime, the necessary showing of credibility is relaxed. *State v. Northness,* 20 Wn. App. 551, 556, 582 P.2d 546 (1978). The court has identified three reasons for this lighter burden:

(1) the report of an identified nonprofessional informant who is a victim or eyewitness of a crime substantially minimizes the danger of casual rumor or irresponsible

conjecture which accompanies the report of an anonymous professional informant. *United States v. Rollins,* 522 F.2d 160 (2d Cir. 1975), [*cert. denied,* 424 U.S. 918, 47 L. Ed. 2d 324, 96 S. Ct. 1122 (1976)]; *United States v. Burke,* [517 F.2d 377 (2d Cir. 1975)]; *United States v. Miley,* 513 F.2d 1191 (2d Cir.), [*cert. denied,* 423 U.S. 842, 46 L. Ed. 2d 62, 96 S. Ct. 74, 75] (1975); (2) an identified citizen informant's report does not raise the spectre of the "anonymous troublemaker" which is always present in unidentified citizen informant situations, *United States v. Darensbourg,* 520 F.2d 985 (5th Cir. 1975); (3) an identified citizen informant's report is less likely to be colored by self–interest. *United States v. Swihart,* [554 F.2d 264 (6th Cir. 1977)]; *United States v. Wilson,* [479 F.2d 936 (7th Cir. 1973)].

*Northness,* at 557. In some situations, however, this presumption of reliability is diminished by the circumstances.

[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case. . . .

. . . The . . . modern view . . . is that as a general proposition any person purporting to be a crime victim or witness may be presumed reliable, though the police must remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case. Thus, courts frequently emphasize, in the course of holding that veracity was properly presumed, that the police were unaware of any "apparent motive to falsify" or that it did not appear to the police "that the accusations by the citizen were reported to the police merely to spite defendant." Other decisions stress that the police, upon learning of a possible motive to falsify, took additional steps to ensure reliability.

(Footnotes omitted.) 1 W. LaFave, *Search and Seizure* § 3.4(a), at 718–20 (2d ed. 1987).

In Washington, decisions have required heightened demonstrations of reliability of informants whose identities were unknown even by police, *State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973); *State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973); and of informants whose

identities were known to police but not revealed to the magistrates who issued the search warrants. *State v. Mickle,* 53 Wn. App. 39, 765 P.2d 331 (1988); *State v. Franklin, supra; State v. Berlin,* 46 Wn. App. 587, 731 P.2d 548 (1987). However, these decisions do not indicate the failure to identify the informant was the determining factor.

> It does not follow . . . that if the name of the person providing the information *is* disclosed, then he is by virtue of that fact alone properly characterized as a citizen-informer entitled to the presumption of reliability. "That a person is named is not alone sufficient grounds on which to credit an informer, but it is one factor which may be weighed in determining the sufficiency of an affidavit." [*United States v. Spach,* 518 F.2d 866, 870 (7th Cir. 1975).] Thus, if the person giving the information to the police is identified by name but it appears that this person was a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency, then the more strict rules regarding the showing of veracity applicable to an informer from the criminal milieu must be followed.

(Footnotes omitted.) 1 W. LaFave, at 726–27. Identification of the informant thus may be viewed as merely a factor to be considered in determining whether the informant is truly a citizen informant, *i.e.,* an innocent victim or uninvolved witness to criminal activity. In the Washington cases *cited above, the circumstances promoted suspicions* that the informants were more than merely civic–minded citizens. In *Chatmon* and *Singleton,* the informants' complete anonymity raised the possibility they were "anonymous troublemaker[s]". *State v. Northness, supra* at 557 (quoting *United States v. Darensbourg,* 520 F.2d 985, 988 (5th Cir. 1975)). And in *Mickle, Franklin* and *Berlin,* the affidavits did not explain why the informants were present at the sites of marijuana grow operations. The circumstances of the informants' tips raise suspicions they were involved criminally themselves or were otherwise motivated by self–interest. *See State v. Northness, supra* at 557. In all of

these cases, suspicious circumstances greatly diminished the presumption of reliability of the informants.

Here, the informant's name was not provided in the affidavit. However, he hardly can be considered anonymous, as the description provided in the affidavit makes him readily identifiable. More importantly, he obtained his information in entirely unsuspicious circumstances. His observations raise no suspicions that diminish the presumption of reliability. On this basis, the credibility prong of the *Aguilar–Spinelli* test is satisfied, and the warrant thus was based on probable cause.

The second issue is whether Mr. Rodriguez was unlawfully arrested while the car was being searched. The trial court concluded Mr. Rodriguez' detention was permitted on the authority of *Michigan v. Summers*, 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981); *see State v. Broadnax*, 98 Wn.2d 289, 654 P.2d 96 (1982).

Mr. Rodriguez contends his detention exceeded the permitted scope of a *Summers* detention because he was transported to the police station, placed in a cell and strip searched. The record does not support the allegations he was placed in a cell and strip searched. The report of proceedings indicates no such allegations were made at the suppression hearing. The court's findings, entered pursuant to CrR 3.6, indicate simply, "[t]he defendant was detained and taken to the police station". At trial, when asked if he was placed in a cell or a regular room, Mr. Rodriguez testified he was placed in a "jail room". Also, although Mr. Rodriguez testified he was strip searched, it is unclear precisely when the search occurred:

Q Now, how long were you in the room before Sgt. Martinez talked to you?
A Around 10 minutes.
Q And did Sgt. Martinez come and see you by himself?
A With somebody.
Q Was that another officer?
A When they took my clothes off, yes.
Q You mean they searched you first?
A Yes.

Q And that was right after you were taken to the station?

A No. Well, excuse me, after—after they took me to the station—after they took me to the station, the police station, they did take my clothes off.

■ Nevertheless, if Mr. Rodriguez' detention exceeded the scope of *Summers,* it constituted a full-blown arrest, and was justified only if there was probable cause to arrest. *See Summers,* at 696. We decline to address the detention question, because we conclude the officers had probable cause to arrest.

The elements of probable cause to arrest are well settled.

> Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been or is being committed.

*State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974). This standard was reiterated in *State v. Fricks,* 91 Wn.2d 391, 398–99, 588 P.2d 1328 (1979), where Justice Horowitz relied and expanded upon *State v. Gluck, supra,* stating:

> The determination will rest on the totality of facts and circumstances within the officer's knowledge at the time of the arrest. The standard of reasonableness to be applied takes into consideration the special experience and expertise of the arresting officer.

(Citations omitted.) *See also State v. Scott,* 93 Wn.2d 7, 604 P.2d 943, *cert. denied,* 446 U.S. 920 [64 L. Ed. 2d 275, 100 S. Ct. 1857] (1980); *State v. Goodman,* 42 Wn. App. 331, 711 P.2d 1057 (1985) [*review denied,* 105 Wn.2d 1012 (1986)].

*State v. Knighten,* 109 Wn.2d 896, 899, 748 P.2d 1118 (1988). Here, Officer Martinez had reasonably trustworthy information, based on the informant's tip and his own experience, that there was cocaine in the car. The officer testified that when he stopped the car, Mr. Rodriguez voluntarily stated the car was his. At that time, the officer had reasonably trustworthy information Mr. Rodriguez was

exercising dominion and control over the car, and thus was in possession of cocaine. Even though the State appears to concede otherwise, the officer had probable cause to arrest Mr. Rodriguez. *See Knighten,* at 901–02. His arrest was not unlawful.

The conviction is affirmed.

MUNSON and SHIELDS, JJ., concur.