[No. 9144–9–III. Division Three. May 25, 1989.]

THE STATE OF WASHINGTON, *Appellant,* v. PATRICK L. PAYNE, *Respondent.*

THOMPSON, C.J., dissents by separate opinion.

*Paul Klasen, Prosecuting Attorney,* and *Mary Ann Brady* and *Peter G. Wales, Deputies,* for appellant.

*Michael Aiken,* for respondent.

SHIELDS, J.—The State appeals an order suppressing evidence seized during a search, terminating its prosecution of Patrick L. Payne. We vacate the order and remand for trial.

On May 19, 1987, Grant County sheriff's officers executed a search warrant at a rural dwelling near Warden, Washington. Evidence obtained in the search apparently formed the entire case against Mr. Payne, who was charged with manufacture of a controlled substance, RCW 69.50.401(a).

The warrant authorizing the search was obtained solely on the basis of an affidavit by Deputies Bryan Pratt and Michael Shay. This affidavit recited the following facts: The sheriff's office on October 17, 1986, had received a teletype notice from the Washington State Patrol regarding a possible marijuana grow operation at the dwelling. On November 28, 1986, deputies observed tall weeds outside the dwelling and noticed there had been some traffic in the driveway and lights turned on inside the house. Neighbors said they were not sure if anyone lived there. Deputies learned the power bill for November 1986 was approximately $11 more than the previous November, and power consumption had been "relatively high" all summer.

The affidavit also contained the following statement:

A citizen informant who wishes to remain confidential contacted me on 5/15/87 at approximately 2000 hours and he stated that within the past 3 weeks he was in the residence listed in this search warrant and did observe in the basement of the residence numerous growing marijuana plants. These plants were growing in wooden trays approximately 4x6 feet each tray had a grow type light over it. The citizen informant stated that he saw approximately 11 sets of trays. He also observed several fans. The citizen informant also stated that he had observed 2 persons in the basement, those persons being identified by the citizen informant as Pat Payne a white male, approximately 40 years of age, and Dick Carpenter, a white male, approximately 40 years of age. These two subjects are known on sight by the citizen informant. Citizen informant stated that he wished to remain confidential because he feared for his own safety. The reason being he had observed one of the subjects in possession of a firearm in the past. Citizen informant also stated that the plants were approximately 2 feet tall. Citizen informant also stated that there was no one living in the residence. The citizen informant stated he is familiar with marijuana and can identify marijuana due to the following experiences, which the citizen informant has relayed to the affiant.

    A. The citizen informant has seen marijuana in growing and dry form. This due to experiences with a close relative in the past.

The information provided by the citizen is considered reliable because it has been supported by a previous intelligence report as stated in the affidavit, and information obtained by Dep. Mich[ael] Shay.

    B. Citizen informant is a long time resident of Grant County.

    C. Citizen informant is a property owner.

    D. Citizen informant has no criminal history.

    E. Citizen informant came to this officer voluntarily and with nothing to gain by giving this information.

After a hearing conducted pursuant to CrR 3.6, the trial court entered the following findings regarding disputed facts:

3. The Court is unable to conclude from the affidavit that the magistrate was provided the identity of the informant or that the affiant officers were provided the identity and address of the informant.

4. The Court is unable to conclude from the affidavit that the affiant officers confirmed the information given regarding the informant's residency, criminal history, property ownership, et cetera.

5. The information given by the informant to the affiant officers was three weeks old on the date of the affidavit.

The court concluded the affidavit did not sufficiently establish the informant's credibility, and that his information was too stale to establish probable cause. The State appeals, contending both factors were present based upon a reasonable inference that the identity of the informant was known to the affiant. We first address the credibility issue.

When a magistrate authorizes a search warrant, his determination is accorded great deference, *State v. Cord,* 103 Wn.2d 361, 366, 693 P.2d 81 (1985). A warrant should not be viewed in a hypertechnical manner, *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977), and doubts generally should be resolved in favor of the warrant. *State v. Walcott,* 72 Wn.2d 959, 962, 435 P.2d 994 (1967) (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965)), *cert. denied,* 393 U.S. 890, 21 L. Ed. 2d 169, 89 S. Ct. 211 (1968). The only issue on appeal is whether the affidavit satisfied the second prong of *Aguilar–Spinelli.*[1]

The State contends the affidavit sufficiently established the informant's credibility, arguing the magistrate could draw a reasonable inference the informant was identified to the affiant and was credible. An informant's tip may establish probable cause to issue a search warrant when the affidavit in support of the warrant shows both the basis of the information and the credibility of the informant. *State v. Jackson,* 102 Wn.2d 432, 433, 688 P.2d 136 (1984) (citing

---

[1]*Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

*Spinelli* and *Aguilar*). This dispute focuses on the credibility prong of the *Aguilar–Spinelli* test; thus, we do not address the basis of knowledge prong.

The determination of credibility depends to some extent on whether the informant is truly a citizen informant, *i.e.,* an innocent victim or an uninvolved witness to criminal activity. Here, the informant was present at an abandoned house and observed the grow operation, inferentially at the invitation of Mr. Payne. Thus, there is some hesitation on our part to conclude the informant was an innocent victim or an uninvolved witness. In *State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973) and *State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973) the informants were not only anonymous, but were not persons known to the police. In *Chatmon,* an informant contacted a Puget Sound Naval Shipyard police officer and related information regarding a male subject who appeared to him to have marijuana in his possession. Other than appearing personally, the unknown informant offered no other information regarding credibility, stating he did not want to get involved. The shipyard police officer relayed this information to the Bremerton police department which eventually stopped the vehicle which had been described by the unknown informant. The defendant was a passenger in the vehicle, in which the arresting officers observed baggies of marijuana. The defendant moved to suppress the evidence and the court agreed, ruling that there must be some information which would reasonably support an inference the informant was telling the truth. *Chatmon,* at 746. The court then qualified that rule with respect to the unknown informant who wishes to remain anonymous:

> In making this evaluation, an ascertainment of the citizen's identity will almost invariably be necessary. However, should the citizen wish to remain anonymous, as here, his reliability could certainly be corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous.

(Footnote omitted.) *Chatmon,* at 748. Here, the affidavit discloses the informant "came to this officer voluntarily", thus there is an inference his identity was known to the officer, if not to the magistrate.

The State also argues the factors listed in the affidavit supporting credibility were sufficient, even given their conclusory aspect. We first note that those same factors were cited in *State v. Franklin,* 49 Wn. App. 106, 107–08, 741 P.2d 83, *review denied,* 109 Wn.2d 1018 (1987) and rejected because of the lack of underlying information to support the affiant's conclusions as to credibility. However, there is no clear indication in *Franklin* that the officer knew the informant's identity. Thus, it can be distinguished from the facts here.

In *State v. Mickle,* 53 Wn. App. 39, 765 P.2d 331 (1988) the trial court's memorandum opinion concluded an inference existed that the identity of the informant was known to both the affiant and the magistrate. *Mickle,* at 41 n.1. *Mickle,* relying on *Chatmon,* rejected the finding of credibility, and granted the motion to suppress, reasoning that the informant, although identified, had failed to state both why the informant was present at the scene of a grow operation and why the informant wished to remain anonymous. Significantly, *Mickle* only assumed there was insufficient evidence to satisfy the credibility prong of *Aguilar–Spinelli* and proceeded to examine the sufficiency of evidence of independent police corroboration. Here, while the informant has failed to give a reason for his presence at the scene of a grow operation, he has indicated he wishes to remain anonymous because he feared for his own safety, having seen Mr. Payne or his companion in possession of a firearm.

The purpose for establishing the credibility of an informant is to insure accountability for the assertions made which implicate another in the commission of a crime, and to allow the magistrate an independent basis from which to determine if the police officer's conclusions regarding probable cause are correct. The factors present here do establish

a basis for ascertaining credibility and imposing account-
ability except for the single omission regarding the infor-
mant's reason for being at the scene of the crime. However,
presenting a reason for being at the scene of the crime is
only one of many suggested factors which indicate credibil-
ity. Thus, we decline to impose it as a single, critical factor
which must be met before credibility is established. *See
Mickle* and *Chatmon,* which did examine the informant's
reason for being at the scene of the crime, but which are
distinguishable because of the court's assumption there was
insufficient evidence of credibility (*Mickle*) or because the
informant chose to remain anonymous (*Chatmon*).

Our analysis finds other confirming support in the record.
Even though information may fail under either prong,
probable cause may still be established by independent
police investigation. *Jackson,* at 438; *Mickle,* at 41. Here,
the affidavit references a tip 6 months earlier from the
Washington State Patrol regarding a grow operation at the
house. A month after this tip, the deputies investigated and
observed tall weeds outside the house, noticed signs of traf-
fic in the driveway, and lights on in the house. They ques-
tioned neighbors and learned the house was vacant. The
electrical consumption was also relatively high for an unoc-
cupied house. Because this earlier tip involved the identical
house, stated the possibility of a similar grow operation,
and named the same individuals, any perceived deficiency
in the credibility of the informant's tip in May was inde-
pendently corroborated by the earlier investigation.

We disagree with the trial court's conclusion the
information was too stale to establish probable cause. *State
v. Petty,* 48 Wn. App. 615, 621, 740 P.2d 879, *review
denied,* 109 Wn.2d 1012 (1987). A marijuana grow opera-
tion is hardly a "now you see it, now you don't" event. A
magistrate may look at all the circumstances, including the
nature and scope of the suspected criminal activity. *Petty,*
at 621; *see generally* 2 W. LaFave, *Search and Seizure* §
3.7(a) (2d ed. 1987). Here, the informant reported an
extensive grow operation, involving approximately 11 4– by

6–foot trays, lights and fans. These facts clearly indicate the criminal activity was ongoing, and the issuing magistrate could reasonably infer the operation was continuing at the time. *See State v. Hall,* 53 Wn. App. 296, 300, 766 P.2d 512, *review denied,* 112 Wn.2d 1016 (1989); *Petty,* at 621–22; *State v. Smith,* 39 Wn. App. 642, 651, 694 P.2d 660 (1984), *review denied,* 103 Wn.2d 1034 (1985).

The trial court's order granting the motion to suppress is vacated and the cause is remanded for trial.

GREEN, J., concurs.

THOMPSON, C.J. (dissenting)—In *State v. Mickle,* 53 Wn. App. 39, 765 P.2d 331 (1988), this court reversed a criminal conviction because an affidavit contained insufficient evidence to establish the reliability of an undisclosed informant. The affidavit at issue in this case is in all material respects identical, yet the majority reaches an opposite conclusion. I dissent.

The majority begins by recognizing that when an informant's tip forms the basis for a search warrant, the affidavit in support of the warrant must establish the informant's credibility. *State v. Jackson,* 102 Wn.2d 432, 433, 688 P.2d 136 (1984); *see Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). The majority also recognizes that because the informant in this case was present in the house, apparently at Mr. Payne's invitation, the State is not entitled to the presumption of reliability accorded a true citizen informant, *i.e.,* "an uninvolved witness or victim of a crime". *State v. Rodriguez,* 53 Wn. App. 571, 574, 769 P.2d 309 (1989). The majority errs, however, when it concludes an informant's credibility is somehow enhanced by the fact, without more, that the police knew his identity.[2] As we observed in *Rodriquez,* at

---

[2]This "fact" itself is far from certain. Like the trial court, I find it difficult to conclude from the affidavit that the officers knew who the informant was. The mere fact the informant came to the police voluntarily creates no such inference.

576, identification of an informant is "merely a factor to be considered in determining whether [he] is truly a citizen informant . . ." The majority treats the informant's unexplained presence at the scene of a crime as a "single omission" in the probable cause formula, without recognizing the critical nature of this inquiry. It is precisely *because* of the suspicious circumstances of the informant's tip that the law requires an additional demonstration of credibility. The mere fact the officers knew who an informant was, without more, cannot satisfy this requirement.

> [I]f the person giving the information to the police is identified by name but it appears that this person was a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency, then the more strict rules regarding the showing of veracity applicable to an informer from the criminal milieu must be followed.

(Footnotes omitted.) 1 W. LaFave, *Search and Seizure* § 3.4(a), at 726–27 (2d ed. 1987) (quoted in *Rodriguez,* at 576).

In *State v. Franklin,* 49 Wn. App. 106, 109, 741 P.2d 83, *review denied,* 109 Wn.2d 1018 (1987), we rejected an affidavit that forced the issuing magistrate to rely solely on the officer's conclusions as to the informant's credibility. The majority attempts to distinguish *Franklin* by contending in that case there was no clear indication the officer knew the identity of the informant. Although I view the difference as insignificant, I note that in *Franklin,* at 109, we specifically treated the informant as one whose identity was "known to the police but not revealed to the magistrate". The cases are not factually distinguishable on that basis.

The majority does not address specific items in the affidavit that purportedly demonstrate the informant's credibility. Nor does it distinguish these credibility factors from those specifically rejected in *Mickle,* at 43:

> [T]he facts used to establish the informant's credibility were not related to the issue of credibility. Even though a citizen may own a business and/or property or may be a longtime resident of a particular county, this information

does not provide the magistrate with a sufficient basis upon which to judge the informant's credibility.

The majority attempts to avoid *Mickle* by contending the court there "assumed" insufficient evidence of credibility. A careful reading of the case demonstrates the court addressed the credibility issue before moving on to the issue of independent police corroboration. Both issues were fairly raised in the case, and the court necessarily decided both.

The deficiencies of the affidavits in *Franklin* and in this case call to mind the basic concept underlying the *Aguilar–Spinelli* test:

> [T]he determination of probable cause to issue a warrant must be made by a magistrate, not law enforcement officers who seek warrants. To perform the constitutionally prescribed function, rather than being a rubber stamp, a magistrate requires an affidavit which informs him of the underlying circumstances which led the officer to conclude that the informant was credible and obtained the information in a reliable way. Only in this way (as the Court emphasized in *Aguilar* and *Spinelli*) can the magistrate make the proper independent judgment about the persuasiveness of the facts relied upon by the officer to show probable cause. *Spinelli,* at 412–16; *Aguilar,* at 110–15.

*State v. Jackson, supra* at 436–37.

The majority also concluded probable cause was established by independent police investigation. The majority cites *Jackson,* at 438, in which the court stated:

> [I]f the informant's tip fails under either or both of the two prongs of *Aguilar–Spinelli,* probable cause may yet be established by independent police investigatory work that corroborates the tip to such an extent that it supports the missing elements of the *Aguilar–Spinelli* test. *Spinelli,* at 417; *Illinois v. Gates,* [462] U.S. [213, 268], 76 L. Ed. 2d 527, 103 S. Ct. 2317, 2347–48 (1983) (White, J., concurring); 1 W. LaFave § 3.3(f). The independent police investigations should point to suspicious activity, "'*probative indications of criminal activity* along the lines suggested by the informant". *United States v. Canieso,* 470 F.2d 1224, 1231 (2d Cir. 1972); Rebell, *The*

*Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards,* 81 Yale L.J. 703, 716 (1972). Merely verifying "innocuous details", commonly known facts or easily predictable events should not suffice to remedy a deficiency in either the basis of knowledge or veracity prong. *See, e.g., United States v. Montgomery,* 554 F.2d 754, 757–58 (5th Cir. 1977); *Spinelli,* at 414; 1 W. LaFave § 3.3(f); Rebell, at 715–20; Kamisar, *Gates, "Probable Cause," "Good Faith," and Beyond,* 69 Iowa L. Rev. 551, 558–66 (1984). Corroboration of public or innocuous facts only shows that the informer has some familiarity with the suspect's affairs. Such corroboration only justifies an inference that the informer has some knowledge of the suspect and his activities, not that criminal activity is occurring. Corroboration of the informer's report is significant only to the extent that it tends to give substance and verity to the report that the suspect is engaged in criminal activity. Note, *The Informer's Tip as Probable Cause for Search or Arrest,* 54 Cornell L. Rev. 958, 967 (1969); Kamisar, at 567.

*See State v. Murray,* 110 Wn.2d 706, 712, 757 P.2d 487 (1988).

The majority first relies on a tip from the Washington State Patrol 6 months earlier. The patrol's teletype notice apparently refers to the dwelling at issue here, and mentions Mr. Payne's name. The tip was obtained in a call to the patrol's drug hotline; the teletype notice refers to a possible reward for the unnamed informant. In *State v. Huft,* 106 Wn.2d 206, 208, 720 P.2d 838 (1986), the court noted such a tip will not satisfy either the basis of knowledge or the credibility prongs of the *Aguilar–Spinelli* test. Also, the age of the information clearly raises an issue of staleness. Finally, the majority concedes the informant was invited to the house by Mr. Payne, as the tipster must have been as well. These circumstances raise the possibility—even a likelihood—that the informant is the same person who had called the hotline 6 months earlier. Surely an informant's credibility cannot be corroborated by his own confidential tip given in anticipation of collecting a reward.

The majority also relies on investigative information the officers collected a month after receiving the State Patrol tip. I have difficulty agreeing with the majority's conclusion that the house was vacant or abandoned.[3] The officers' affidavit actually stated the deputies talked with *one* neighbor, who was not sure if anyone lived there, but saw people come and go occasionally. In these circumstances, signs of traffic in the driveway and lights shining inside the house are innocuous, unsuspicious details, as is the presence of tall weeds outside a rural dwelling.

Finally, the majority relies on evidence of power usage at the home. The affidavit stated the electricity bill for the month of November was $11 higher than for the previous year, and usage had been "relatively high" throughout the summer. The affidavit did not establish a correlation between increased electricity use and illegal activity. *See State v. Sterling,* 43 Wn. App. 846, 851, 719 P.2d 1357, *review denied,* 106 Wn.2d 1017 (1986). More significantly, the affidavit provides only a conclusory showing of the increase. The $11 difference may be explained in a variety of plausible, unsuspicious ways. *See Huft,* at 211. Nothing in the affidavit explained what was meant by "relatively high" power use during the summer. Several cases have refused to find adequate corroboration in evidence of *significant* increases in electricity use. In *Huft,* at 208, 211, for example, the court held a 46 percent increase was insufficient. *See Murray,* at 710, 712 (200 percent increase, without more, may be innocuous); *State v. White,* 44 Wn. App. 215, 217, 720 P.2d 873 (1986) (200 percent increase insufficient), *review denied,* 107 Wn.2d 1020 (1987); *Sterling,* at 851 (400 to 500 percent increase sufficient only in combination with other suspicious factors); *State v. McPherson,* 40 Wn. App. 298, 698 P.2d 563 (1985) (200 to 300 percent increase insufficient).

---

[3]The trial court's conclusion of law 2 states in part: "[T]here was no showing that the [electricity] consumption was unusually high, nor was there any showing that the premises either were or were not occupied as a residence."

The majority's reliance on the other information provided in the affidavit is unfounded. The additional facts failed to provide probative indications of criminal activities along the lines suggested by the informant.

I would follow established case law and affirm the trial court's decision to suppress the evidence.

Reconsideration denied June 20, 1989.

Review denied at 113 Wn.2d 1019 (1989).