[Nos. 21832-8-I; 21871-9-I. Division One. September 5, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL WILKE, ET AL, *Appellants.*

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant Wilke.

*Jodi M. Pennington,* pro se.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine* and *Ronald Doersch, Deputies,* for respondent.

PEKELIS, J.—Michael Wilke and Jodi Pennington appeal from the trial court's denial of their motion to suppress physical evidence. They allege that the trial court erred in (1) concluding that the affidavit in support of the search warrant sufficiently established both the knowledge and the reliability of the informant; (2) concluding that police investigation revealing cardboard over an intact window and power records showing increased power usage were corroborative evidence supporting the affidavit, not innocuous facts; (3) finding that statements the police officer affiant made relating to the power usage and to the informant's identity were neither deliberately nor recklessly made in disregard of the truth; and (4) concluding that the power records were legally obtained.

## I

Detective John Springer of the Everett Police Department stated in an affidavit made in support of the search warrant which was issued in this case:

> Your affiant was contacted on 12–3–86 by a Concerned Citizen who wishes to remains [*sic*] anonymous for fear of reprisals, the Concerned Citizen stated that there was marijuana growing operation in progress at the above address. The Citizen stated that his/her child was in the above address within the last 5 days and observed a room full of green plants growing in one of the bedrooms. The Citizen stated that the child also had said there was foil taped over the window and a sheet hung up seperating [*sic*] half of the bedroom, one half of the bedroom and closet were full of green plants, and that there [were] several lights hanging over the plants. The citizen also stated that he/she had shown sketches of four different plant leafs to the child one of which was a cannabis leaf, the child picked out the cannabis leaf sketch without hesitation. The Citizen also said that the child had been in the residence approximately 4 weeks ago and seen a male subject hand

WILKE some money, WILKE in turn handed the subject a plastic baggie containing some green vegetable matter.

Your Affiant spoke with the child on the telephone and asked him/her about what he saw at WILKE'S HOUSE. The child stated that in a back room of house there was a closet and half of a room full of tall green plants, the child further stated that the room's entrance was covered by a sheet. Further the child stated that there was foil all over the window in the room and that when he/she went outside he/she could see cardboard covering the window. The child went on to sav [sic] that there were two or three long white lights hanging over the plants and also a red light, the child also said that there was a fan running in the room. Your affiant asked the child if the Concerned Citizen had shown him/her sketches of plant leafs he/she stated yes and he/she had picked number one. Your affiant then spoke with the Concerned Citizen, who stated the sketch number one was the cannabis leaf. The Citizen is familiar with what Marijuana looks like growing, cut, and packaged for sale from education at school and from friends and relatives who were involved in the drug scene.

Your affiant obtained P.U.D. records for the residence at 2031 Maple and discovered a substantial increase in kilowat [sic] useage [sic] over the last year. Det. Burke of the Everett Police Narcotics Unit drove by the residence and told your Affiant that he observed that a window at the rear of the house on the northside [sic] was covered over by cardboard and held up by some kind of tape even though the window was in place and intact.

It has been the experience of your Affiant as a Narcotics Detective for the last 14 months and as a Police Officer for the last six and a half years, that unusually high P.U.D. readings and the cover over a window that was in place and undamaged, are indicators of a marijuana growing operation. It is common for the high electrical usage because of the electricity needed for several grow lights that burn very brightly. It is also common for coverings to be placed over windows to hide the grow operation from public view and to keep in the humidity which marijuana plants need to grow.

Your affiant can get a hold of the Concerned Citizen and/or the child if the need should arise.

Given the aforementioned facts and the timeliness of the information and the schooling given to the child at home and at school in marijuana identification, your Affiant has probable cause to believe that the crime of Manufacture of a Controlled Substance towit [sic] Marijuana is taking place at 2031 Maple.

In addition, Detective Springer testified at the hearing on the motion as follows: A citizen informant contacted him by

telephone several weeks before the December 3, 1986, contact described in the affidavit. On that first call, the informant stated that she was the ex–wife of Michael Wilke and that following a visit to Wilke her son described seeing what she believed to be marijuana plants at Wilke's home. Springer told her that the information was stale and that he could take no action based on information older than 48 to 72 hours. The informant asked Springer if she had to continue allowing her child to go to the house. Springer told her he believed that was a civil matter and that given the legal constraints he had with regard to fresh information, there was nothing he could do at that point.

Subsequently, the informant called Detective Springer on December 3, 1986, as described in the affidavit. Although he knew that the child was 10 years old, he omitted the name and age of the child due to the informant's fear of a violent response from Wilke. In neither conversation were any custody disputes or visitation problems discussed other than the informant's concerns about having her son visit a home in which she believed marijuana was being grown and sold. Detective Springer denied that he was hiding anything regarding the informant's motives.

With regard to the power records, Detective Springer acknowledged that his conclusion that there was a "substantial increase in kilowat [sic] useage [sic] over the last year" was based on the nearly continuous rise in power usage from the month of April 1985 through April 1986, rather than on comparing the usage in each billing period of the first year to that in the same billing period of the next year. He also admitted that he had no comparative records for the average use of that size home, and that it was not unusual for power usage to increase from the spring to winter months.

The continuous method of evaluating the power records showed a 220 percent increase in usage from April of 1985 to April of 1986, a gross increase which Springer considered substantial. He acknowledged that a comparative evaluation would have shown increases varying between $1.50 and

$10 per month from the first year to the next, and that in his opinion such an increase was *not* consistent with a marijuana growing operation. He acknowledged that he had not revealed this to the magistrate, but denied any intentional deception.

The trial court held that the affidavit alone was sufficient to establish probable cause, but in the alternative, the increased power usage and the cardboard over the window were sufficiently corroborative to establish reliability. The court also found that the affiant officer's statements regarding power usage were at most negligent, rather than made deliberately or in reckless disregard of the truth. Further, the court held that the officer had not been misleading or deceptive in not revealing the informant's relationship to the defendant in the affidavit. Finally, it held that the power records had been legally obtained. Thus, the trial court denied the motion to suppress evidence obtained in the search.

## II

Wilke and Pennington contend that the affidavit provides insufficient information concerning the citizen informants to satisfy either the basis of knowledge or the reliability prongs of the *Aguilar–Spinelli* test. *See Spinelli v. United States,* 393 U.S. 410, 413, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).[1] First, as to the basis of knowledge prong, the defendants contend that the affidavit does not establish the basis of the informant's knowledge that the plants were marijuana.

█ Under the *Aguilar–Spinelli* test, for an informant's tip to create probable cause for a search warrant to issue,

---

[1]The United States Supreme Court has abandoned the 2–pronged *Aguilar–Spinelli* test, replacing it with a "totality of the circumstances" analysis. *See Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). Our State Supreme Court, on the other hand, retained the *Aguilar–Spinelli* rule as consistent with Const. art. 1, § 7 and prior case law. *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984).

the officer's affidavit must set forth some of the underlying circumstances from which the informant drew his conclusions so that a magistrate can independently evaluate whether the informant's basis of knowledge was acquired in a reliable manner, and a basis for the officer's conclusion either that the informant was credible or that his information was reliable. *See State v. Jackson,* 102 Wn.2d 432, 435, 688 P.2d 136 (1984) (citing *Aguilar,* 378 U.S. at 114; *Spinelli,* 393 U.S. at 413). The affidavit must set forth sufficient facts to lead a reasonable person to conclude that there is a probability that the defendant is involved in criminal activity. *State v. Cord,* 103 Wn.2d 361, 365–66, 693 P.2d 81 (1985).

A probable cause determination by a magistrate should be given great deference by a reviewing court. *Cord,* 103 Wn.2d at 366. The issue should not be viewed in a hypertechnical manner. *State v. Walcott,* 72 Wn.2d 959, 962, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890, 21 L. Ed. 2d 169, 89 S. Ct. 211 (1968). Doubts should be resolved in favor of the warrant's validity. *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977).

An affidavit stating that marijuana was observed in a particular location must include a showing that the observer had the necessary skill, training or experience to identify the plants. *State v. Matlock,* 27 Wn. App. 152, 155–56, 616 P.2d 684 (1980). The affidavit must state more than a personal belief; it must also state the factual, underlying circumstances upon which the belief was premised. *State v. Vonhof,* 51 Wn. App. 33, 41, 751 P.2d 1221, *review denied,* 111 Wn.2d 1010 (1988), *cert. denied,* __ U.S. __, 102 L. Ed. 2d 782, 109 S. Ct. 790 (1989).

Here, the affidavit contained a detailed description of the method by which the adult informant identified the plants with the child observer, including the adult informant's acknowledgment of past familiarity with marijuana. The fact that the identification is based partially on hearsay need not be unsatisfactory if there is sufficient information so that the hearsay establishes a knowledge base.

*Jackson,* 102 Wn.2d at 437–38. It would have been preferable, of course, if the adult informant had retained the sketches and shown them to the officer, or if the officer had interviewed the child in person. However, when viewed in a commonsense rather than a hypertechnical manner, the identification of the plants was sufficient.

Furthermore, this was not a case in which the affidavit merely stated that marijuana had been observed. Rather, this affidavit described a marijuana grow operation in detail, including a description of the room, lights, fan, hanging sheets and cardboard over the window to hide the operation, and the exchange of baggies containing green, leafy material for money. These additional details provided a sufficient basis of knowledge to support the affidavit.

### III

The defendants next contend that the information in the affidavit was insufficient to establish the reliability of the informants.

Although our courts have relaxed the reliability requirement in cases involving citizen informants, there must still be enough information to support an inference that the informant is telling the truth. *State v. Huft,* 106 Wn.2d 206, 211, 720 P.2d 838 (1986). Reliability of a citizen informant who wishes to remain anonymous may be established if the police ascertain background facts supporting a reasonable inference that the informant is prudent or credible and without motive to falsify. This evaluation of reliability may be "corroborated by description of him, his purpose for being at the locus of the crime, and the reason for his desire to remain anonymous." *State v. Chatmon,* 9 Wn. App. 741, 748, 515 P.2d 530 (1973).

As noted by Judge Green, however, the *Chatmon* rule was developed in the context of *anonymous* informants who chose not to reveal their identities even to the police. *State v. Franklin,* 49 Wn. App. 106, 112, 741 P.2d 83 (Green, J., dissenting), *review denied,* 109 Wn.2d 1018 (1987). In contrast, where the citizen's identity was revealed to the police

but not to the magistrate, Washington courts have reached inconsistent results. *See State v. Payne,* 54 Wn. App. 240, 773 P.2d 122 (1989) (reliability established); *State v. Mickle,* 53 Wn. App. 39, 765 P.2d 331 (1988) (reliability not established); *State v. Franklin, supra* (reliability not established); *State v. Berlin,* 46 Wn. App. 587, 731 P.2d 548 (1987) (reliability established).

*Payne, Mickle* and *Berlin* involved marijuana grow operations; the charge in *Franklin* was possession of marijuana with intent to deliver. The *Mickle* affidavit contained a description of the informant but no explanation as to why the informant was at the locus of the crime or why he/she wished to remain anonymous. *Mickle,* 53 Wn. App. at 42–43; *see also Payne,* 54 Wn. App. at 245. Thus, the court determined the *Chatmon* factors had not been met and reversed the conviction.

The *Berlin, Payne,* and *Franklin* affidavits were substantially the same in that they each contained a brief description of the informants and stated the same reason for a desire to remain anonymous, to wit, fear of retribution. *See Payne,* 54 Wn. App. at 242; *Franklin,* 49 Wn. App. at 107; *Berlin,* 46 Wn. App. at 589. The *Franklin* court found the affidavit lacking and reversed.[2]

The *Berlin* court, on the other hand, acknowledged the *Chatmon* rule, but concluded it need not be rigidly applied since the *Berlin* informants had divulged their identities to the police. *Berlin,* 46 Wn. App. at 590–92.[3] *Payne* took a similar view, stating that "many suggested factors [may]

---

[2]In *Franklin,* the affidavit contained information only about the defendant's future intent to deliver a controlled substance, and thus did not include reference to the affiant's purpose for being at the scene of a crime.

[3]The only distinguishing factor of any substance between the affidavits in *Berlin* and *Franklin* is that in *Berlin* the informants revealed not only their identities but their addresses and telephone numbers to the police. *See Franklin,* 49 Wn. App. at 113 (Green, J., dissenting).

indicate credibility", and declined to make stating the purpose for being at the scene of the crime the dispositive factor. *Payne*, 54 Wn. App. at 246. We agree with the analysis in *Berlin* and *Payne*.

Here, it is evident that the adult informant was the concerned parent of a child who was either a friend, neighbor or relative of the defendant. The adult informant did describe a valid reason, fear of reprisals, for the desire to remain anonymous.

Further, it was reasonable for the magistrate to infer from the statement that the "affiant can get a hold of the Concerned Citizen" that the police had the name, address and telephone number of the informants, or at least knew their identities. The affidavit provides further reliability insofar as it reveals that during the officer's telephone interviews, the adult informant's story was wholly consistent with the child's. Giving deference to the magistrate's determination, the information in the affidavit as to the informants' reliability is sufficient.[4]

## IV

Defendants next contend that the statements made by the officer with regard to a "substantial increase" in power usage were intentionally or recklessly made in disregard of the truth and must be stricken. Since we have held that corroboration with the power records is unnecessary here, the officer's statements regarding the increased power usage are immaterial. The defendants further contend, however, that the officer misled the magistrate by omitting the information that the informant was the ex–wife of Michael Wilke, alleging that this fact tends to make her more likely to give false information.

---

[4]The defendants further claim that the trial court erred in finding that the officer's observation of cardboard over the bedroom window and the increased power usage provided corroboration to remedy the deficiencies in the affidavit. Since we find the affidavit sufficient on its face, we need not reach this issue. For the same reason, we do not reach the defendants' contention that their power records were illegally obtained.

■ If a defendant establishes by a preponderance of the evidence that statements made by an agent of the State in an affidavit in support of a search warrant were false or made with reckless disregard of the truth, and if the remaining material in the affidavit is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded. *Franks v. Delaware,* 438 U.S. 154, 156, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978); *State v. Thetford,* 109 Wn.2d 392, 398, 745 P.2d 496 (1987). The *Franks* test for material misrepresentations has also been extended to material omissions of fact. *State v. Cord,* 103 Wn.2d at 367. Recklessness is established where the affiant entertains serious doubts as to the truth of facts or statements in the affidavit. *State v. O'Connor,* 39 Wn. App. 113, 117, 692 P.2d 208 (1984), *review denied,* 103 Wn.2d 1022 (1985). Negligent or innocent mistakes are not sufficient to void a warrant. *State v. Stephens,* 37 Wn. App. 76, 78, 678 P.2d 832, *review denied,* 101 Wn.2d 1025 (1984).

The trial court conducted a *Franks* hearing on this issue and found that the officer's omission was not misleading or deceptive. Substantial evidence supports this finding. In fact, there is no basis in the record for Wilke's position that the informant was motivated to give false information by virtue of her former marital relationship to Wilke. The officer testified that his purpose was to protect her identity, based on her fear of reprisals. Moreover, he had no information that would indicate to him that there were any ongoing custody disputes. The only fact relating to visitation known to the officer was the mother's valid concern about whether she must permit her child to continue visiting a home where she suspected illegal activity was taking place. That does not equate with knowledge of a custody dispute. Thus, there is no basis to void the search warrant as a result of any misstatement or omission.

Affirmed.

SCHOLFIELD and WINSOR, JJ., concur.

Review denied at 113 Wn.2d 1032 (1989).