## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No. 47887-1-II |
| Respondent, | | |
| v. | | |
| MARVIAN CHRISTOPHER MARTIN, | | UNPUBLISHED OPINION |
| Appellant. | | |

MELNICK, J. — Marvian Christopher Martin appeals his felony domestic violence court order violation conviction. Because the trial court did not err by denying his motion to suppress or by admitting noncustodial statements, we find no error. Lastly, we do not consider Martin's assertion that he received ineffective assistance of counsel. We affirm.

FACTS

The State charged Martin with a felony domestic violence court order violation[1] based on his contact with the protected party, Jenilee Gonzales. The State alleged Martin had two previous convictions for violating protection orders. A jury found Martin guilty. By special verdict, the jury also found that Martin and Gonzales were members of the same family or household.[2]

---

[1] RCW 26.50.110(5).

[2] RCW 10.99.020(3).

I.    PRETRIAL MOTIONS

   A.    Motion to Suppress Evidence

   On April 3, 2015, Martin filed a motion to suppress evidence pursuant to CrR 3.6. He argued that Puyallup Tribal Officer Ryan Sales exceeded the permissible scope of a *Terry*[3] stop. Martin also argued that the "informant's tip" provided an insufficient basis for the stop. Clerk's Papers (CP) at 15.

   On May 27, 2015, the trial court heard testimony on the motion to suppress. Sales, the sole witness at the hearing, testified as follows. He worked as a police officer with the Puyallup Tribal Police for nine years. On May 17, 2014, he went to a gas station on an unrelated matter. Upon exiting his vehicle, Sales "heard some yelling" and "commotion" near the gas pumps. Report of Proceedings (RP) (May 27, 2015) at 6-7. An unidentified man approached Sales and told him that a man had assaulted a woman. He pointed to a black Mercedes Benz as it pulled out of the gas station. Sales observed the vehicle and he heard yelling and cursing coming from the vehicle and "an animated driver moving his hands around." RP (May 27, 2015) at 9. The vehicle's windows were open. Sales did not have time to get the witness's information before he pursued the vehicle. Sales returned to his own vehicle and began following the suspect vehicle. Sales told dispatch he was investigating a "[p]ossible domestic violence situation." RP (May 27, 2015) at 10.

   Sales turned his emergency lights on signaling the driver to pull over. After the vehicle stopped, the driver, later identified as Martin, quickly exited the car, asked Sales why he was being stopped, and began "waving his hands around, talking loudly." RP (May 27, 2015) at 12. Sales explained that "there was a reported [domestic violence situation] coming from [Martin's] vehicle, a fight between the male and female." RP (May 27, 2015) at 11. After Martin stepped out, his

---

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

female passenger, later identified as Gonzales, also quickly exited the vehicle and began to walk away; however, she lingered by the vehicle. Sales described the female as looking "afraid." RP (May 27, 2015) at 12. Sales described the driver's behavior as "[v]ery aggressive." RP (May 27, 2015) at 12.

Sales then called for another officer to assist him. Martin began to walk away, giving Sales the indication that he was going to flee. Sales told Martin he could not leave or he would be pepper sprayed. Sales then told Martin to sit on the curb. When asked for his name, Martin gave Sales his name and date of birth. Gonzales also provided her identification to Sales.

When the other officer arrived, he spoke with Gonzales and Sales spoke with Martin. Martin told Sales that he was trying to protect his wife (Gonzales) from an assault by females earlier that morning. Sales conducted a records check and found that there was a Department of Corrections (DOC) escape warrant out for Martin. He also discovered a protection order against Martin in which Gonzales was the protected person. Sales arrested Martin for violation of the no contact order.

Sales confirmed that his dashboard camera filmed the entire incident.[4] The trial court watched the video. The trial court denied the motion to suppress.

The trial court filed findings of fact. In relevant part, the trial court found:

IV.
The information provided by the citizen was corroborated by Officer Sales own observations. This formed a reasonable, articulable suspicion that allowed the officer to perform a *Terry* stop. The assault had occurred in the presence of the citizen and in the proximity of the officer. The officer heard yelling from the same car and saw defendant waving his arms which corroborated the citizen's information. The officer almost immediately after speaking with the citizen got in his car to pursue the vehicle pointed out to him by the citizen.

---

[4] The video consistently depicted the events about which Sales witnessed and testified.

V.

The stated purpose for the stop was for a possible domestic violence assault. Officer Sales activated his lights and sirens and informed dispatch that he was pursuing a black Mercedes Benz for a possible domestic violence. Officer Sales then pulled the vehicle over for that purpose. Officer Sales did not pull defendant over for a traffic violation or issue any kind of traffic citation. The time between when the officer started to pursue the vehicle and when the vehicle stopped was very brief. The stop occurred in Tacoma, Washington.

. . . .

IX.

Officer Sales had a basis to ask Ms. Gonzales for her identification. The officer had been informed of a potential domestic violence assault and has an interest in identifying and checking on the health and safety of the victim of such an assault. Ms. Gonzales was not ordered out of the vehicle, she got out on her own.

CP at 38-39, 40. In relevant part, the trial court made the following conclusions of law:

I.

The *Terry* stop of defendant was justified as Officer Sales had a reasonable, articulable, suspicion that the defendant had committed an assault based on what he was told by the male citizen combined with what he personally heard and observed. The stop was not pretextual.

II.

The *Terry* stop was a reasonable length and was appropriately prolonged and expanded by defendant's actions as well as the existence of warrants for defendant's arrest and a valid no contact order prohibiting defendant from contacting his passenger.

III.

Defendant does not have standing to object to Officer Sales requesting identification from the passenger as standing only exists if possession is an element of the offense. Further, Officer Sales had an independent basis [ ] that justified him asking for identification as he was making a routine check on the health and safety of a domestic violence victim.

CP at 40-41.

4

B.     Confession Hearing[5]

On July 13, 2015, the trial court heard arguments regarding the admissibility of Martin's statements.  It relied on the evidence from the video.  Martin argued that all of the statements he made should be suppressed because Sales did not read Martin his *Miranda*[6] rights.  The trial court granted the motion in part and suppressed Martin's statements made after he was told to sit down because he was in custody at that point.  However, the trial court ruled admissible the statements made to Sales when Martin gave his name and date of birth.  The trial court also noted that Martin had already stipulated to his identity for the upcoming trial.

On July 14, 2015, the trial court entered its findings of fact and conclusions of law regarding the confession hearing.  The trial court found:

> III.
> Officer Sales['s] initial detention and requests for information did not constitute a custodial situation. Defendant and the female passenger, Jenilee Gonzales, got out of the car immediately after it stopped.  Defendant came out and threw his hands up in the air.  Defendant started talking immediately after getting out of the car.  Further, the officer properly asked defendant for his identification. Defendant did not have identification but did provide his name and date of birth to the officer.

CP at 52.  However, the court found that the "detention eventually turned custodial" because Martin made "movements that concerned the officer," and the "statements the State seeks to admit in this case about defendant's relationship with Ms. Gonzales, specifically that she is his wife and that she is pregnant with his child, were not made in response to questioning but came after [Martin] was ordered to sit down or be pepper sprayed."  CP at 53.

---

[5] This hearing was held pursuant to CrR 3.5.

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

As a result, the trial court concluded:

> II.
>
> The court finds that based on the five part test in *United States v. Kim*[, 25 F.3d 1426 (9th Cir. 1994)], Officer Sales was required to read defendant his *Miranda* rights after he was ordered to sit or be pepper sprayed as he was "in custody" at that time.
>
> III.
>
> The Court did not make the finding that defendant was subject to interrogation but as the Court found that the detention turned custodial, defendant should have been advised of his right to remain silent.
>
> IV.
>
> The Court finds that defendant's identification, referred to in Finding of Fact III, was prior to defendant being "in custody" and was a proper part of the investigative stop. Defendant's statements identifying himself to Officer Sales are admissible.
>
> V.
>
> The Court finds that the statements [made about Martin's relationship with Gonzales]were made after defendant was "in custody." The statements were not made in response to police questioning. However, as defendant was not read his *Miranda* right[s] before making these statements, the statements are not admissible.

CP at 54-55.

II.     TRIAL AND SENTENCING

For the trial, the parties stipulated to Martin's identity, and that he was the person Sales stopped and identified as the driver of the vehicle on May 17, 2014. Both the stipulation and Martin's statement identifying himself were then offered into evidence at trial. The trial court also admitted certified copies of Martin's prior judgment and sentences. Sales testified consistently with his testimony at the hearing for the motion to suppress. The jury found Martin guilty. By special verdict, the jury also found that Martin and Gonzales were members of the same family or household.

The trial court ordered the DOC to conduct a prison-based DOSA screening for Martin.[7] On July 22, 2015, the trial court sentenced Martin to 30 months of confinement on a DOSA and

---

[7] RCW 9.94A.500, .660.

30 months of community custody. The trial court entered a five-year no contact order between Martin and Gonzales. Martin appeals.

ANALYSIS

I. MOTION TO SUPPRESS

Martin argues that the trial court erred by denying his motion to suppress because the record does not support the trial court's factual findings or conclusions. We disagree.

A. Standard of Review

We review a trial court's denial of a motion to suppress by considering whether substantial evidence supports the challenged findings and whether those findings support the trial court's conclusions of law. *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001). Evidence is substantial when it is enough "to persuade a fair-minded person of the truth of the stated premise." *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999). Any unchallenged findings of fact are considered to be verities on appeal. *State v. Bonds*, 174 Wn. App. 553, 562, 299 P.3d 663 (2013). We review conclusions of law de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014).

B. The Trial Court Did Not Err By Denying The Motion To Suppress

"Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, a police officer generally cannot seize a person without a warrant supported by probable cause." *State v. Z.U.E.*, 178 Wn. App. 769, 779, 315 P.3d 1158 (2014), *aff'd*, 183 Wn.2d 610, 352 P.3d 796 (2015). "'As a general rule, warrantless searches and seizures are per se unreasonable.'" *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)). However, "[e]xceptions to the warrant requirement fall into several broad categories: consent, exigent circumstances,

searches incident to a valid arrest, inventory searches, plain view," and investigative stops as set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). "The burden is always on the state to prove one of these narrow exceptions." *Ladson*, 138 Wn.2d at 350.

A *Terry* stop is justified when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. "For a *Terry* stop to be permissible, the State must show that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015) (quoting *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)). When considering the reasonableness of a stop, the court must evaluate it based on a totality of the circumstances. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). The trial court takes into account an officer's training and experience when determining the reasonableness of a *Terry* stop. *Glover*, 116 Wn.2d at 514.

If an officer has a reasonable articulable suspicion that a suspect is involved in criminal activity, the officer may detain the suspect, request him or her to produce identification, and ask him or her about his or her activities. *State v. Little*, 116 Wn.2d 488, 495, 806 P.2d 749 (1991). If an officer bases his or her suspicion on an informant's tip, the tip must bear some "indicia of reliability under the totality of the circumstances." *Z.U.E.*, 183 Wn.2d at 618 (internal quotations omitted). To show some indicia of reliability, there must

> either be (1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion. These corroborative observations do not need to be of particularly blatant criminal activity, but they must corroborate more than just innocuous facts, such as an individual's appearance or clothing.

*Z.U.E.*, 183 Wn.2d at 618-19 (internal citations omitted).

There are different standards for establishing an informant's reliability depending on the type of informant. Washington courts have categorized informants into four types: (1) anonymous informants; (2) known informants to the police who do not want their names revealed, whether it is a "professional" informant or private citizen informant; (3) identified informants who are revealed to the magistrate; and (4) eyewitness informants. *State v. Northness*, 20 Wn. App. 551, 555, 582 P.2d 546 (1978). The last category includes informants described in *State v. Chatmon*, 9 Wn. App. 741, 748 n.4, 515 P.2d 530 (1973): "Where eyewitnesses to crime summon the police, and the exigencies are such (as in the case of violent crime and the imminent possibility of escape) that ascertainment of the identity and background of the informants would be unreasonable, the reliability requirement might be further relaxed." *Northness*, 20 Wn. App. at 555 (internal quotations omitted).

The citizen informant in this case falls within the fourth category and is presumed to be reliable. *State v. Rodriguez*, 53 Wn. App. 571, 574-75, 769 P.2d 309 (1989). He was an eyewitness, who provided the police information about an assault and an absconding suspect. Sales corroborated the information with his own observations.

Martin challenges the trial court's finding IV. Substantial evidence supports the trial court's finding. Sales testified that a citizen approached him and told him that he witnessed an assault and pointed out the vehicle to Sales. Sales observed yelling and cursing coming from the identified vehicle and observed the "animated driver moving his hands around." RP (May 27, 2015) at 9. The informant witness's information was corroborated by Sales's own observation of a potential assault or domestic violence situation between a male driver and female passenger.

9

Because substantial evidence supports this finding and the other findings are verities on appeal, we review the trial court's conclusions. We conclude Sales had a reasonable articulable suspicion that an assault had occurred. The trial court did not err by denying the motion to suppress.

## II.    STATEMENT OF ADDITIONAL GROUNDS

### A.    Suppression of Statements

In his statement of additional grounds (SAG), Martin asserts that the State violated his Fifth and Fourteenth Amendment rights against self-incrimination because he was not read his *Miranda* rights. He asserts that all statements he made before his arrest should be suppressed as fruits of the poisonous tree.

Because the trial court suppressed all but one of Martin's statements, he can only be challenging the court's ruling on the admissibility of his statement where he identified himself and provided his date of birth to Sales. The trial court concluded this statement was noncustodial.

CrR 3.5 governs the admissibility of an accused's statement. Admission of statements obtained in violation of *Miranda* is subject to a harmless error analysis. *State v. Reuben*, 62 Wn. App. 620, 626, 814 P.2d 1177 (1991). We review the trial court's findings of fact from a CrR 3.5 hearing to determine if they are supported by substantial evidence. *State v. Gasteazoro-Paniagua*, 173 Wn. App. 751, 755, 294 P.3d 857 (2013). We review de novo whether the trial court's findings of fact support its conclusions of law. *Gasteazoro-Paniagua*, 173 Wn. App. at 755. "Unchallenged findings of fact are verities on appeal." *Gasteazoro-Paniagua*, 173 Wn. App. at 755.

Martin does not challenge the trial court's findings of fact; therefore, they are verities. The trial court found that Martin immediately exited the vehicle and began speaking to Sales and that

he was not in custody until after he began making moves that concerned Sales, who then ordered Martin to sit down. The trial court did not err by admitting the statements Martin made regarding his identity and date of birth. The trial court's findings support the conclusion that Martin was not in custody when he made the admitted statement.[8]

B.      Ineffective Assistance of Counsel

Martin asserts that he received ineffective assistance of counsel. This assertion seems to revolve around his motion for a new lawyer that the trial court denied. At the hearing on the suppression motion, Martin's lawyer told the trial court that Martin filed a bar complaint against her, and it had been dismissed, but she did not know whether Martin believed she could effectively represent him. Martin told the trial court he had trouble communicating with his lawyer. He also claimed that she told the trial court "that she would not object to what the prosecutor" would say in the case. RP (July 9, 2015) at 8. He asserts that after asking the court for a new lawyer, his lawyer stated in open court, "'I will not represent him in trial,' in which the Judge stated, 'he didn't see a problem.' When the State rested its case, the attorney did [not] put up a defense, and this was not a trial tactic." SAG at 3. He asserts that his lawyer failed to subject the government's case to adversarial testing, as she adopted and acted upon the belief that her client should be convicted.

To the extent that Martin is arguing that this specific exchange happened between his counsel and the trial court and it would prove ineffective assistance, Martin does not cite to the record and our review of the record has not uncovered such an exchange.

---

[8] We also note that Martin stipulated to the admission of his identity at trial. Although we conclude the trial court did not err, had we held to the contrary, this stipulation would have rendered the error harmless beyond a reasonable doubt. *See State v. Nysta*, 168 Wn. App. 30, 43, 275 P.3d 1162 (2012) (an error only requires reversal if prejudicial).

Under RAP 10.10(c), the court is "not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review." Further, the court does not consider a SAG if it does not inform the court of the "nature and occurrence of alleged errors." RAP 10.10(c). If this exchange did occur at a hearing that was not included in the record on appeal, the appropriate means of arguing this issue is through a personal restraint petition, which may be filed concurrently with the direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). As a result, we do not consider this issue on its merits.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Lee, P.J.

Sutton, J.